## RUDE *v.* WESTCOTT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 187. Argued and submitted March 7, 1889. — Decided March 18, 1889.

A general and full assignment by a patentee of the letters patent, and all his interest therein, to the full end of the term, and of all reissues, renewals, or extensions, accompanied by a clause that the net profits from sales, royalties, settlements, or any source, are to be divided between the parties, the patentee to receive one fourth thereof, is a full and absolute transfer of title; and the assignee does not hold the property as trustee for the benefit of the patentee, but is trustee only of one fourth of the profits which may be received.

The payment of a sum in settlement of a claim for an alleged infringement of letters patent, cannot be taken as a standard to measure the value of the improvements patented in determining the damages sustained by the owner of the patent in other cases of infringement.

An agreement concerning compensation for the use of a patented invention, where the charge may be fixed at the pleasure of the owner of the patent, cannot be received as evidence of the value of the improvements patented so as to bind others who have no such agreement.

In order to make the price received by a patentee from sales of licenses a measure of damages against infringers, the sales must be common, that is, of frequent occurrence, so as to establish such a market-price for the article that it may be assumed to express, with reference to all similar articles, their salable value at the place designated.

Conjectural estimates of injury, founded upon no specific data, but upon opinions formed upon guesses, without any knowledge of the subject, furnish no legal ground for the recovery of specific damages.

THE case, as stated by the court in its opinion, was as follows:—

The original complainants, John M. Westcott and Charles W. West, allege in their bill that they are the owners, by assignment from the patentee, of two patents to Hiram Moore for improvements in seeding machines, one issued November 20, 1860, and extended for seven years from November 20, 1874, and the other issued March 28, 1861, for seventeen years; that since the assignment the defendants have made, used, and sold seeding machines in the District of Indiana, and in various other places in the United States, without the consent or license of the complainants and in infringement of their patents; and that the defendants are still engaged in such unlawful acts. The complainants therefore pray that the defendants may upon their best knowledge and information answer as to the matters alleged, and be compelled to account for and pay to the complainants the profits acquired by them and the damages sustained by the complainants, and be enjoined from making, using, and vending the said machines, or any part thereof, or any seeding machine made in accordance therewith, or similar to those heretofore made, used, and sold by them. The bill was filed in March, 1876. An answer was filed in June following, in which the defendants admit that they have been and are engaged in the manufacture and sale of seeding machines, but deny that they infringe either of the patents or any of the rights of the complainants under them, or that the complainants have been thereby deprived of any profits. They also deny that Hiram Moore was the first and original inventor of the alleged improvements described and claimed in the patents, and designate several patents previously issued which, as they allege, embody the substantial and material parts of the invention claimed.

In March, 1881, an amendment to the answer was allowed, in which the defendants deny that the complainants have such title to the patents as to enable them to maintain the suit against the defendants, setting up that on the 10th of November, 1874, the complainant Westcott, by an instrument in writ-

ing, assigned to Isaac Kinsey and Aaron. Morris an undivided part of his interest in the patents, which instrument is recorded in the Patent Office of the United States, and that on the 4th of February, 1879, the said Isaac Kinsey assigned one twelfth interest in the patents to one Lowell L. Lawrence and the Wayne Agricultural Company, which assignment is also on record in the Patent Office.

A replication to the answer having been filed, proofs were taken, and among other things the assignment by Moore, the patentee, to the complainants, and the assignment by Westcott to Kinsey and Morris, mentioned in the bill and answers, were produced. They are as follows, omitting such parts as are not material to the questions presented:

*Assignment of Moore to Westcott and West, and contract
between them.*

"This agreement, made this sixth day of October, anno Domini one thousand eight hundred and seventy-four, by and between Hiram Moore, residing near Ripon, in the county of Fond du Lac, and State of Wisconsin, party hereto of the first part; Charles W. West, of Cincinnati, in the county of Hamilton, and State of Ohio, party hereto of the second part, and John M. Westcott, of Milton, in the county of Wayne, and State of Indiana, party hereto of the third part, witnesseth:

"That whereas sundry letters patent of the United States heretofore have been granted to said Moore, which said letters patent are respectively numbered, entitled and dated as follows, to wit: No. 30,685, dated November 20th, 1860, and entitled, 'Improvement in Seed-Drills,' and No. 31,819, dated March 26th, 1861, and entitled 'Improvement in Seed-Drills;' and whereas the said Moore is justly indebted unto the said Charles W. West in the full sum of ten thousand dollars, for money advanced to aid him, the said Moore, in perfecting his inventions, and is desirous of securing the repayment of the same; and whereas the said Westcott is desirous of acquiring an interest in the inventions and letters patent aforesaid, and in any reissue, renewal, or extension thereof: Now, therefore,

"Know all men by these presents, that, for and in considera-

tion of the premises, and of the sum of five dollars in lawful money, to me in hand, by the said Westcott and West, before the execution hereof, paid, and of other valuable considerations, me thereunto moving, I, the said Hiram Moore, do hereby assign, sell, and set over unto the said Charles W. West and John M. Westcott the entire right, title and interest in and to the letters patent aforesaid, and in and to the inventions and improvements represented, shown, or described therein, including any renewal, reissue, or extension thereof, the same to be held and enjoyed by the said West and Westcott, and their legal representatives, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made, to the full end of any term or terms for which the letters patent aforesaid, or either of them, have been, or hereafter may be, granted, reissued, renewed, or extended.

"I hereby further agree to sign such lawful papers, and do such lawful acts as may, by the counsel learned in law, of the said West and Westcott, be deemed necessary or expedient in order to obtain an extension or reissue of the patents aforesaid, or to assert, maintain, or defend the rights secured by said letters patent. It is expressly understood, however, that the costs and charges of the proceedings aforesaid shall be defrayed by said West and Westcott, as hereinafter provided.

"In consideration of the premises, I hereby further make, constitute and appoint the said Charles W. West and John M. Westcott my true and lawful attorneys in law and in fact, with power irrevocable, giving and granting to them full and exclusive and unreserved power and authority, for me and in my name, place and stead, to assume and take upon themselves the entire and exclusive management and control of the aforesaid letters patent, and of each and every one of them, and to dispose of all the rights, title and interest which I have under the same, and under each and every of them, for such price or prices, upon such terms, and to such persons, and for such place or places, as they my said attorneys, shall deem proper, and in my name, place and stead, and as my own proper act and deed, to sign, seal, deliver and acknowledge all such deeds

and instruments of writing as shall be necessary or proper for the granting or licensing to others the said rights under the said letters patent, and to each and every of them, and to ask, demand, sue for and receive the price of fees, or any part or parts thereof, paid or payable for such grants or licenses, and in my name to execute and deliver receipts and acquittances therefor, and in my name to bring to account and reckoning, and to ask, demand, sue for, and recover and receive of and from all and any person whomsoever, who may have been, or may be, manufacturing or selling said drills containing the improvements aforesaid, or by any or either of them, such reasonable price or fee for such use of said improvements, or either of them, as my said attorneys shall deem proper and reasonable, . . . and generally to do and perform, and execute in my name as aforesaid, all and whatever other acts, matters and things that they may deem expedient and requisite, or may be advised to do in and about the premises, as fully and effectually, to all intents and purposes, as if I myself were present and did the same, I, the said Hiram Moore, hereby ratifying, allowing and confirming, and agreeing from time to time, and all times hereafter, to ratify, allow and confirm as good and valid all and whatsoever the acts, matters and things which my said attorneys, or their substitute, shall lawfully do, or cause to be done, in and about the premises, by virtue of these presents.

  &ast;  &ast;  &ast;  &ast;  &ast;

"The said John M. Westcott, for his part, agrees, at his own cost and charges, to procure the extension of said letters patent, November 20, 1860, now pending, if practicable, including the expenses already incurred as well as those which hereafter may be incurred in said behalf, which sum is to be paid absolutely whether said extension is granted or not, and in no event is any part of said sum to be reclaimed from, or refunded or repaid by, said Moore, or to be deducted from the sum or sums collected under said patents.

"It is hereby covenanted and agreed, by and between the parties hereto, as follows: That from the sum or sums collected under the letters patent aforesaid, from sales, royalties,

or settlements, or from any other source, shall first be deducted the costs, charges and expenses of collecting the same, including all litigation expenses save those of the extension application, and then the net profits or receipts shall be divided among the parties hereto as follows: To Hiram Moore, or his legal representatives, one fourth part; to C. W. West, or his legal representatives, one fourth part; to John M. Westcott, or his legal representatives, one half part. In case of loss or failure to realize any profit under said patents, all litigation expenses aforesaid are to be paid by said Westcott, it being expressly understood by the parties hereto that under no circumstances are said Moore or West to incur any obligation, or be under any liabilities for said expenses. It is further agreed that John M. Westcott is to make no charge for his own time spent in this behalf, nor is said West to make any charges for his services.

" It is also expressly understood that said Moore's interest is to continue during and throughout the extended time of the patent of November 20, 1860. Should such extension be granted, the parties hereto hereby agree in good faith to perform the covenants between them made.

" In testimony whereof, the parties hereto have affixed their hands and seals, the day and year first above written.

" In presence of —       HIRAM MOORE.
   " Wm. D. Baldwin.       C. W. WEST.       { Seal. } "
   " Mary T. Palmer.       J. M. WESTCOTT.

*Assignment of Westcott to Morris and Kinsey, and contract between them.*

" Whereas, heretofore, to wit, October 6th, 1874, Hiram Moore, of Fond du Lac County, Wisconsin, Charles W. West of Cincinnati, Ohio, and John M. Westcott of Milton, Indiana, entered into a contract and article of agreement in relation to certain improvements in grain-drills, for which letters patent have been issued to said Moore, No. 30,685, dated November 20th, 1860, and No. 31,819, dated March 26th, 1861, in which agreement, amongst other things, the said Moore assigns and conveys to said West one fourth, and to said Westcott one

half, and retains for himself one fourth of said interest, contained in said letters patent, for said improvements in said grain or feed-drills;

"In said assignment, said Wescott, on his part, agrees, at his own cost and charges, to procure the extension of said letters patent of November 20th, 1860, including expenses already incurred, as well as those that may hereafter occur in said behalf, to be paid whether such extension be granted or not, and in no event is said sum, or any part thereof, to be reclaimed from or refunded by said Moore, and that from sums collected under said letters patent, from sales, royalties, or settlements, or from any other source, shall first be deducted the costs, charges and expenses of collecting the same, including all litigation expenses, save those of the extension application, and then the net profits, or receipts, shall be divided among said parties; to said Moore one fourth, said West one fourth, and said Westcott one half part. In case of loss or failure to realize any profits under said patent, all litigation expenses aforesaid are to be paid by said Westcott, said Moore or West to be under no liabilities for said expenses. Said Westcott is to make no charge for his own time spent in this behalf, nor is said West to make any charge for his services; said Moore's interest is to continue during and throughout the extended term of the patent of November 20th, 1860, should such extension be granted;

"And whereas, in consideration of the foregoing, Isaac Kinsey and Aaron Morris of Milton, in Wayne County, Indiana, are desirous of obtaining an interest in said letters patent, they thereby agree to and with said John M. Westcott, of the same place, to severally take an equal interest with him in the same;

"Therefore, this article of agreement witnesseth: That said John M. Westcott hereby agrees to and with said Isaac Kinsey and Aaron Morris, and does hereby set over and assign to each of them one third part of his one half interest, retaining one third part himself in said letters patent; and said Kinsey and Morris, fully understanding the original agreement mentioned, do hereby agree to and with said Westcott, to be at

one third expense each with said Westcott, jointly, as set forth in said agreement, and shall be equally entitled and receive one third profit or proceeds, if any, in said one half interest, and in all things pertaining hereto to be governed by this and the original contract and agreement.

"In witness whereof, we have hereunto set our hands and affixed our seals, this 10th day of November, 1874.

"J. M. WESTCOTT.   [Seal.]
"ISAAC KINSEY.   [Seal.]
"AARON MORRIS.   [Seal.]"

In May, 1881, the case was brought to a hearing on the pleadings and proofs, and the court held that the patents to Moore were valid; that he was the original and first inventor of the improvements specified in them, and that the title to them was vested in the complainants; that the defendants had infringed the first and second claims of the patent of 1860, and the sixth claim of the patent of 1861, and that complainants were entitled to recover the profits and gains which had accrued to the defendants from the manufacture, use, and sale of the improvements specified in those claims; and ordered a reference to one of the masters of the court to ascertain, state and report an account of the gains and profits which the defendants or either of them had received by infringing the said claims, as well as the damages the complainants had sustained thereby.

The master thereupon proceeded to comply with the order, and on the 6th of December, 1883, made his report to the court. That report is not contained in the record, but from references to it, and quotations from it in the opinion of the court in considering exceptions taken to it, it appears that he reported that the complainants waived all claim for profits, and relied upon the proofs produced as establishing a fixed license fee or royalty as the measure of damages. After stating the testimony of the witnesses who had been examined on the point, he said that it was very difficult to determine from this evidence whether it made proof of such an established royalty or license fee as furnished a criterion upon which to estimate complainants' damages.

The proof on the subject of damages was thus stated in his report:

"It is proved that the Wayne Agricultural Company paid the royalty of $1 for one-horse machines and $2 for two-horse machines for four years — a sum which, in the absence of evidence to the contrary, may be regarded as reasonable. Mast & Co. paid between $2000 and $3000 in cash and conceded privileges, which Westcott estimates to have been worth as much more, for infringement. It is true Westcott threatened suit, and when money is paid under threat of suit merely as the price of peace, it furnishes no evidence of the amount or value of the real claim in dispute; but the settlement made shows that Westcott was paid something substantial for the infringement, and that the fear of litigation was a small element of the settlement itself. Westcott says that he arrived at the amount by his estimate of the number of the machines made by Mast & Co. and other considerations which are explained in Mast's deposition. Mast says no estimate was made of the number of machines."

"Westcott says he gave licenses like the one attached to his deposition to Mast & Co., and to English and Over. Mast was examined but not interrogated on that point. Mr. English, the active man in the firm of English & Over, says he does not recollect whether they took a license or not."

Notwithstanding the difficulty expressed by him, the master reported that the defendants had made and sold 800 infringing one-horse machines, and that complainants' damages on that account were $800; and that defendants had made and sold 800 infringing two-horse machines, and that complainants' damages on that account were $1600, making $2400 damages in full. The court, after a full consideration of the exceptions, came to the conclusion that without further evidence the complainants were entitled to only nominal damages, and entered an order that the case be recommitted to the master, with directions to admit further evidence as to damages, and to report the same, with his conclusions of law.

On the 23d of April, 1885, the master made a second report, in which among other things he stated that the additional

evidence taken by him did not strengthen the proofs previously
made in support of the claim that the complainants had estab-
lished a license fee or royalty, which furnished a criterion by
which to estimate the damages.    He found that between 1870
and May, 1881, the defendants had made and put on the mar-
ket about two thousand drills which infringed " the elements
of the combination covered by the first claim," one half of
which were one-horse and one-half two-horse drills.    He then
considered the value of the claim or combination to defend-
ants, who had used it in violation of complainants' rights, and
stated that the evidence on this subject was conflicting; that
some of the manufacturers considered it of so much value
that during the life of the patent they had paid a stipulated
license for its use, and that afterwards they said it was worth
very little if anything, and that it might be true that its value
had been impaired and destroyed by new devices and improve-
ments ; and that the value of the combination as estimated by
the witnesses varied from nothing to six dollars per drill.    He
therefore reported that complainants were entitled to damages
for 1000 one-horse drills at 75 cents each, and 1000 two-horse
drills at $1.50 each, making in all $2250; but how he arrived
at the conclusion that seventy-five cents on each drill of one
class, and one dollar and fifty cents on each drill of the other
class, were the actual damages sustained, nowhere appears.

Exceptions were taken to the report on various grounds,
and among others : That the findings were based on specula-
tion, and were only guesses, both as to the number of infring-
ing drills and as to the value of the claim infringed; and that
it failed to state any definite facts or evidence as a basis or
ground for the findings.    In July, 1885, the court decreed
that the complainants were entitled to recover $1800 for the
damages sustained, and that so far as the master's report was
inconsistent with that decree, the exceptions to it were sus-
tained, but in other respects the exceptions were overruled.
From this decision the appeal is taken.

Pending the suit, Charles W. West, one of the complainants,
and George W. Rude and John R. Rude, two of the defend-
ants, died, and the bill was revived by the substitution of the

executors of West in his place, and the administrators of George W. Rude in his place, and the executor of John R. Rude in his place.

*Mr. Arthur Stem* for appellants. *Mr. L. Hill* was with him on the brief.

*Mr. E. E. Wood* and *Mr. Edward Boyd*, for appellees, submitted on their briefs.

Mr. JUSTICE FIELD, having stated the facts of the case, delivered the opinion of the court.

The defendants below, appellants here, seek a reversal of the decree of the Circuit Court upon several grounds, and, among others, these: 1st, that the complainants have not established a title in themselves to the patents; and 2d, that they have not proved any damages for the infringement of the claims of the patentee.

The first of these grounds rests upon the supposed effect of the assignment executed by the patentee to the complainants on the 6th of October, 1874. The instrument in its words of transfer is amply full and expressive to convey to them his entire interest in and title to not only the patents then issued, but also any renewals or extensions thereof. His language is:

"I, the said Hiram Moore, do hereby assign, sell and set over unto the said Charles W. West and John M. Westcott the entire right, title and interest in and to the letters patent aforesaid, and in and to the invention and improvements represented, shown, or described therein, including any renewal, reissue, or extension thereof, the same to be held and enjoyed by the said West and Westcott, and their legal representatives, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made, to the full end of any term or terms for which the letters patent aforesaid, or either of them, have been, or hereafter may be, granted, reissued, renewed, or extended."

Nothing could add to the force of this language. The concluding provision, that the net profits arising from sales, royal-

ties, or settlements, or other source, are to be divided between the parties to the assignment so as to give the patentee one fourth thereof, does not, in any respect, modify or limit the absolute transfer of title. It is a provision by which the consideration for the transfer is to be paid to the grantor out of the net profits made; it reserves to him no control over the patents or their use or disposal, or any power to interfere with the management of the business growing out of their owner-ship. The clause appointing the assignees attorneys of the grantor, with authority to use his name whenever they deem proper in such management, does not restrict in any way the power of the assignees after the transfer of the prop-erty. It was inserted, perhaps, from over-caution, but it was unnecessary. The assignees were under no obligation to con-sult him in the management of the property. Their own interests were a sufficient guarantee of a judicious exercise of their power of disposition.

The assignment of Westcott to Kinsey and Morris does speak of an interest possessed by him in the patents, but it explains what that interest is, viz., one half part of the net profits from the patents, arising from sales, royalties, or settlements, or other source, and it refers to the original assignment of the patentee to West and Westcott.

It follows that the contention of the defendants, that the complainants have not established their title to the patents, is not sustained. The complainants do not hold the property as trustees for the benefit of the patentee; they are only trus-tees for him of one fourth of the profits which may be received by them. *Tilghman* v. *Proctor*, 125 U. S. 136, 143.

The second ground of the appellants is, we think, well taken. The master reported in his first report that the complainants waived all claim for profits arising from the manufacture, use and sale of the patented machines, and relied upon the proofs as establishing such a fixed royalty or license fee as would furnish a criterion by which to estimate complainants' dam-ages; and proceeding upon that view, he found from two in-stances, and perhaps a third instance, in which a specified sum had been paid for the use of the machines, or for the privilege

of making and selling them, that the complainants had suffered damages on each one-horse machine used by the defendants of one dollar, and on each two-horse machine used by them of two dollars. One of the instances relied upon was that of the Wayne Agricultural Company, which had paid the sums named for the use of the machines for four years. It is not clear when the payment was made, but it would seem that it was made in part under a threat of suit, and in part as the result of an arbitration after litigation on the subject had been commenced, and to avoid future litigation. It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement. The second instance relied upon is that of a corporation by the name of P. P. Mast & Co., which had obtained a license to manufacture grain-drills and seeders at Springfield, Ohio, and to sell the same within the United States, upon an agreement to pay one dollar for every one-horse drill or seeder and two dollars for every two-horse drill, provided that if the fee were paid upon the days designated for semi-annual returns, or within ten days thereafter, a reduction of fifty per cent should be made from the fee. The corporation soon afterwards changed its feeding device, and thus did not infringe, and it settled for a portion of the fees; but it does not appear what they were. It is plain, without regard to the settlement had, that an agreement of this kind, where the charge may be fixed at the pleasure of the owner of the patent, cannot be received as evidence of the value of the improvements patented so as to bind others having no such agreement. The third instance is that of an alleged license to English & Over. The complainant Westcott testifies that they continued to pay as long as they were in partnership, but how much, or how long that partnership continued, does not appear. And Mr. Over, a member of that firm, does

not recollect that it ever took a license. Westcott also testifies that no other persons or corporations than those mentioned ever took any licenses from them under the patents sued upon.

It is undoubtedly true that where there has been such a number of sales by a patentee of 'licenses to make, use and sell his patents, as to establish a regular price for a license, that price may be taken as a measure of damages against infringers. That rule was established in *Seymour* v. *McCormick*, 16 How. 480, and affirmed in *Corporation of New York* v. *Ransom*, 23 How. 487; *Packet Co.* v. *Sickles*, 19 Wall. 611, 617; *Birdsall* v. *Coolidge*, 93 U. S. 64; and *Root* v. *Railway Co.*, 105 U. S. 189, 197. Sales of licenses, made at periods years apart, will not establish any rule on the subject and determine the value of the patent. Like sales of ordinary goods, they must be common, that is, of frequent occurrence, to establish such a market price for the article that it may be assumed to express, with reference to all similar articles, their salable value at the place designated. In order that a royalty may be accepted as a measure of damages against an infringer, who is a stranger to the license establishing it, it must be paid or secured before the infringement complained of; it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention; and it must be uniform at the places where the licenses are issued. Tested by these conditions, the sums paid in the instances mentioned, upon which the master relied, cannot be regarded as evidence of the value to the defendants of the invention patented. The court below so treated them, and held that without further evidence the complainants would be entitled only to nominal damages, and remanded the case to the master to take further evidence. He did so, but in his second report he stated that the additional evidence did not strengthen the proofs previously made in support of the claim that complainants had established a license fee or royalty which furnished a criterion by which to estimate the damages. He therefore proceeded to estimate the value of the claim or combination patented, to the defendants, who had used it in violation of the complainants' rights,

and for that purpose took the opinions of different persons on the subject. Of the witnesses produced by the complainants, it does not appear that any ever manufactured or used the patented machines. One of the principal witnesses stated that he had never read the patent, had never seen a drill made like that described, had no experience in the matter of licenses, and that he placed his estimate of the value of the claim patented at what he considered would be a fair recompense to the inventor. The estimates of all the witnesses of the complainants were merely conjectural; that is, were made without having knowledge of any saving secured either in the cost of the machine or in the labor required for its use, they simply stating that they considered that the amounts named by them would be a reasonable and fair royalty or license fee for the patented drill. Naturally estimates founded upon supposed but not known benefits were widely apart, varying from three to six dollars for a two-horse drill and half those sums for a single horse drill. On the other hand, witnesses produced by the defendants, who had examined, and some of whom had used, the patented drills, stated that they did not consider them of any more utility than other seeding drills in use, and that they did not bring any greater price in the market. The master does not appear to have given weight to the judgment of any of the witnesses, but concluded, though by what process of reasoning is not perceived, that seventy-five cents on each one-horse drill and double that sum on each two-horse drill would be the proper amount to allow, and as he had found, though upon testimony equally loose and insufficient, that there were one thousand one-horse drills and an equal number of two-horse drills, he reported that the complainants were entitled to $2250 as damages. The court was not satisfied with his conclusion, and, without stating the ground of its action, ordered the amount to be reduced to $1800 as damages which the plaintiff should recover, besides costs, and $150 fee for the master, sustaining the exceptions to the report so far as it was inconsistent with that decree, and in other respects overruling them.

The action of the court is subject to the same objection as

the report of the master. The ruling that a royalty was established, as made in the first report, had been repudiated, by it, and no evidence of the value of the invention to the defendants was adduced except the conjectural estimates stated; and they furnished no satisfactory basis for any damages, much less data, which authorized the specific finding made as to the damages for each drill used. Opinions not founded on knowledge were of no value. Conclusions from such opinions were at best mere guesses. By the decision rendered a settled rule of law was violated, that actual, not speculative, damages must be shown, and by clear and definite proof, to warrant a recovery for the infringement of a patent. As was said long ago by this court: "Actual damages must be calculated, not imagined; and an arithmetical calculation cannot be made without certain data on which to make it." *New York* v. *Ransom,* 23 How. 487, 488. There was no question in this case of damages arising from lost sales, or injurious competition, for no machines had been manufactured and put on the market by the patentee, or by the complainants, his assignees.

No legal ground being shown for the recovery of specific damages for the alleged infringement of the patents, the decree must be

*Reversed, and the cause remanded, with directions to enter a decree for the complainants for nominal damages.*