HOUSTON, E. & W. T. RY. CO. v. STERN et al.

(Circuit Court of Appeals, Fifth Circuit. May 5, 1896.)

No. 448.

1. 'ATENTS—ACTION FOR INFRINGEMENT—DAMAGES.
In an action at law for an infringement of a patent, the damages recoverable are not restricted to such as are actual, but evidence may be given of sales to other parties, or of an established license fee as royalty.

2. SAME—EVIDENCE—OPINION.
In such an action, a witness cannot be permitted to give his opinion as to what would be the fair, reasonable value of the right to use the invention.

3. SAME—MARKET VALUE.
In an action for damages for infringement of plaintiffs' patent for a spark arrester, the only evidence to show the market value of its use was evidence of three sales, made 10 years before the infringement complained of, in one of which the price did not appear, while it was shown that the invention had been on the market during all the intervening time, and that efforts had been made to sell it, but no sales were proved. Held, that the evidence was insufficient to establish any market value for the patent, and it was error to refuse to instruct the jury, if they found an infringement, to give nominal damages only.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

J. A. Baker, Jr., and R. S. Lovett, for plaintiff in error.

Presley K. Ewing and H. F. King, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. This is an action at law, brought in the court below by the defendants in error, Stern and Campbell, asserting their ownership of letters patent of the United States No. 10,093, reissued April 25, 1882, upon the application of Caspar F. Lochner, for an alleged new and useful improvement in spark arresters, to recover damages from the plaintiff in error, the Houston, East & West Texas Railway Company, for the use, without the license of the owners, or either of them, of said patented improve-

ment on 18 locomotives or engines owned and controlled by the said railway company. The actual damages claimed were $900,—$50 for each locomotive. The defendant railway company made no contest as to the issue and reissue of the patent, the validity of the same, the ownership of the plaintiffs, nor as to the actual use of the alleged patented improvement upon 18 locomotives; but said defendant claimed, in regard to such use, that it had been continuous for more than 10 years next preceding the institution of the suit, with the knowledge, acquiescence, and permission of the plaintiffs, and without any knowledge, information, or reason to believe, on the part of the defendant, that the same was covered by letters patent of the United States. The defendant in its answer further alleged that Edward A. Campbell, one of the plaintiffs, was the master mechanic employed by the defendant railway company from January, 1884, to January, 1894, and as such had the management and control of the locomotives and engines, superintended all repairs and renewals of the same, and selected and purchased all spark arresters and other material and supplies; that, if the spark-arresting appliance in the patented improvement claimed was in use on the defendant's road, said Campbell had placed the same thereon without the knowledge of or notice to the defendant, or any of its officers, and thereby licensed the defendant to use the same upon all its engines; that the said patented improvement was not in general use, and the said Campbell placed the same upon the engines of defendant's road, and licensed defendant to use the same, in order to advertise it, and promote its sale; that in July, 1894, the gauge of the defendant's road was changed from narrow to standard, about which time defendant purchased 18 standard-gauge locomotives for use upon its said road, and, intending to continue the use of wood as fuel for its locomotives, directed that the 18 standard-gauge locomotives so purchased be equipped with the same character of spark-arresting appliance as had been in use upon the narrow-gauge engines operated by defendant, which defendant subsequently learned to be the same as the invention claimed by the plaintiffs: that, while the said spark-arresting appliance had proved moderately successful on the said narrow-gauge engines, the same proved wholly insufficient on the standard-gauge, and were absolutely worthless; and that, as soon as practicable thereafter, and within a reasonable time, the said spark-arresting appliances were taken from said engines, and the use of them entirely discontinued and abandoned. On the trial several bills of exception were taken to the rulings of the court, and some seven errors have been assigned thereon for consideration in this court.

The first two are in relation to the admission of evidence on the question of damages. The defendant below insisted that the damages recoverable must be actual, and that proof as to sales to other parties or of an established license fee as royalty was inadmissible. The trial judge overruled the objection, and, we think rightly, admitted evidence of sales made and license fees collected. The objections made were to the sufficiency of the evidence.

The third assignment of error is based upon the following:

"Thereupon plaintiffs' counsel asked said witness to state, if able to do so from his experience as a master mechanic and machinist, and his special knowledge of the utility and benefits of the invention in question, the fair, reasonable value of the right to use the same as applied to locomotives. To which inquiry the counsel for the defendant objected on the grounds (1) that the same was irrelevant; (2) that the question called for an opinion, without any facts as a proper basis for an opinion, and in respect to a matter about which an opinion was immaterial; and (3) that the opinion of the witness would not tend to show the actual damages for the alleged infringement,—which objections the court overruled, and the witness answered that such fair, reasonable value was, in his opinion, the sum of $50 for the life of each locomotive, and that he would not take less than such $50 therefor."

We sustain this assignment on all the grounds urged in objection to the admissibility of the evidence.

The fourth and fifth assignments are not well taken. Under the issues and evidence, it was for the jury to decide whether the defendant had been licensed to use the patented appliances, and whether the defendant was charged with notice of the patent.

The sixth and seventh assignments, covering a charge refused and a charge given in relation to the rule of damages, present the serious question in the case. On the trial it was shown that a license fee had been paid by three different railroad companies for the right to use a certain number of the improved appliances, and that these license fees had been paid more than 10 years before the institution of the suit, although the patent had been kept upon the market, and the plaintiff Campbell had traveled over the country for a year in the effort to sell the same. In relation to these sales, we give the evidence, as recited in the bill of exceptions:

"That plaintiffs had sold numerous of the inventions to said railroads above named, always at the uniform price of $50 for each invention for the life of the locomotive on which placed, the invention to be made by the road, and that thereby they had established a market value for the invention at the royalty or price of $50 for the right to use the same on each locomotive; * * * that plaintiffs had sold, for $50 each, the patent right to said invention to the Gulf, Colorado & Santa Fé Railway Company, in 1882, for 27 of its locomotives, but that these were comprised in one sale; that they had at different times, and from time to time between 1881 and the time when the road went into the hands of a receiver in 1885, sold the patent right to such invention, at $50 each, to the Houston, East & West Texas Railway Company, the whole comprising the right to use same on about a dozen locomotives; that, except their sales to said two roads, plaintiffs had made no sales of such patent right since witness acquired it, but that they had since then been continuously in the market with it, and are now holding it at the regular price of $50 for each locomotive; that, before witness acquired his interest in the patent, some sales were made of the right to use the invention to the Texas & New Orleans Railway Company, but how many he did not know, and he did not know and had not heard of any other sales, except to that road, before he acquired his interest."

The plaintiff, Edward A. Campbell, being duly sworn, testified the same, in substance, as his co-plaintiff to the point of defendant's first exception, as shown supra. On this evidence, which was without conflict, and constituted the whole basis of the plaintiffs' right to recover beyond nominal damages, the infringement being conceded, the defendant requested the court to charge the jury that if they found, under the instructions already given in other branches of the case, that the plaintiffs were entitled to recover

at all, then that they could in no event recover more than nominal damages. This charge was refused, to which exception was seasonably taken. The bill of exceptions shows that the judge charged the jury, in regard to damages, as follows:

"If the evidence in this case shows to you that the owners of the invention or patent right described in plaintiff's petition had made numerous sales, or a sufficient number of sales, of the same, or of the right to use the same, to establish a market value therefor, such market value is a license fee for the use of said appliances, and would be the measure of damages to which plaintiffs are entitled, if you find in their favor. The mere fact of one or two sales having been made might or might not be sufficient to establish such market value or license fee. It would depend upon when they were made,—the proximity of time. And in that connection you are to take into consideration the character of the appliance, the number of sales made, the length of time the parties had it in charge, and, from all the circumstances in evidence before you, determine whether it was a salable article, for which a license fee had been established by sufficient sales. This does not mean that a license fee is established at a given sum merely because the owner may say, 'I will not take less' than such sum. That would not establish a license fee. It must appear that sales were made at a certain price; and if, under the circumstances, and from all the evidence before you, it appears that such sales have been made to the extent to establish a license fee at $50, and if you find against the defendant, the measure recovered would be the number of spark-arresters defendant used multiplied by $50. But if you find, from the evidence, that sales have not been made sufficient to establish the market value of those arresters and a license fee of $50, you are to determine whether or not the plaintiffs have been injured by the defendant's use of the spark arrester in question,—in other words, a reasonable damage that has accrued to the plaintiffs, if any, by such use. I do not think there is any evidence here upon which I can submit that phase of the case to you. It is true plaintiff Campbell said he would not take any less than $50, but that is not proof that said sum was the market value of said appliance. It is simply the expression of the opinion of the witness, and not the true measure at all. The mere fact that the owner says that he would not take less than a certain sum is not the value. The question is, what could it be sold for, or would it bring in a market, under favorable circumstances? Consequently, if you do not find, from the evidence before you, that the invention or spark-arresting appliance in question had a market value or license fee established by sufficient sales, you will find for the plaintiffs only nominal damages, which is one dollar."

—And that exception thereto was reserved.

In an action at law, the rule of damages for the infringement of letters patent has recently been declared by the supreme court in Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, as follows:

"At law the plaintiff is entitled to recover, as damages, compensation for the pecuniary loss he has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts; the measure of recovery in such cases being, not what the defendant has gained, but what the plaintiff has lost."

In the same case the court held that, as the evidence did not disclose any license fee or impairment of the plaintiff's market, the plaintiff could only recover nominal damages in case the jury found against the defendant on the issue of infringement. In the present case there was no evidence whatever of impaired market or other damage to the plaintiffs resulting from the infringement, outside of the evidence as to three sales of the right to use as recited above; and the question here is whether said sales established a

license fee which the jury could take as a basis of actual loss to the plaintiffs resulting from the infringement by the defendant.

In Rude v. Westcott, 130 U. S. 152, 165, 9 Sup. Ct. 463, it is said:

"Sales of licenses, made at periods years apart, will not establish any rule on the subject and determine the value of the patent. Like sales of ordinary goods, they must be common,—that is, of frequent occurrence,—to establish such a market price for the article that it may be assumed to express, with reference to all similar articles, their salable value at the place designated. In order that a royalty may be accepted as a measure of damages against an infringer who is a stranger to the license establishing it, it must be paid or secured before the infringement complained of, it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention, and it must be uniform at the places where the licenses are issued."

In the instant case, although three sales are sworn to, the price in only two is given, and one of these was a sale made before the reissue of the patent. All were more than 10 years before the infringement alleged in this case, and, during these 10 years, although the appliance was on the market, not a single sale or license fee is shown. It cannot be seriously contended that the sales referred to established the market value of the patent. From this state of the case, and under the authorities above quoted, it is clear that the court erred in refusing to charge the jury to find nominal damages only, and erred in giving the instructions recited, which assume that there was sufficient evidence before the jury to warrant a finding that $50 was an established royalty or license fee for the use of the patented appliance. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a venire facias de novo.