AMERICAN SULPHITE PULP CO. v. DE GRASSE PAPER CO.

(Circuit Court, N. D. New York. July 11, 1911.)

1. PATENTS (§ 322*)—SUIT FOR INFRINGEMENT—ACCOUNTING BEFORE MASTER.
On an accounting before a master in a patent suit where both parties have been fully heard and the hearing closed, the master may properly refuse to reopen it on motion of a party, where no surprise nor newly discovered evidence is claimed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 322.*]

2. PATENTS (§ 319*)—DAMAGES FOR INFRINGEMENT—PROOF OF ESTABLISHED LICENSE FEE.
Evidence that a complainant granted licenses under two patents for a fixed sum without any division as between the two does not establish a fixed and uniform license fee under one of the patents by which the damages recoverable from an infringer may be measured.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. § 319.*]

In Equity. Suit by the American Sulphite Pulp Company against the De Grasse Paper Company. On exceptions to report of special master. Exceptions overruled, and report confirmed.

See, also, 151 Fed. 47.

Frank T. Benner, for complainant.

W. B. Van Allen and Henry Schreiter, for defendant.

RAY, District Judge. The Circuit Court of Appeals, following and approving American Sulphite Pulp Company v. Howland Falls Pulp Co., 80 Fed. 395, 25 C. C. A. 500, held that defendant, De Grasse Paper Company, had infringed the Russell patent, No. 11,282, dated November 15, 1892 (reissued), the claims of which read as follows:

"1. The improved pulp-digester herein described, having an outer shell A and a continuous lining or coat B of cement, as described, applied to the interior of the said shell, for the purpose set forth.

"2. The improved pulp-digester herein described, having an outer shell A. a continuous lining or coat B of cement, substantially as described, applied to the interior of the said shell, and an interior lining of tiles C, all substantially as set forth."

[1] Interlocutory judgment accordingly and for an accounting having been entered, the matter went to a special master to take evidence and report as to the complainant's damages. Much time was consumed and much evidence taken; the hearings continuing over a long period of time. It is clear that defendant's position on the accounting was or should have been well understood by the complainant. After the master had submitted his "Draft" report, the complainant moved before the master to open the accounting for the purpose of taking additional testimony. There was no pretense of newly discovered evidence, and clearly there was no surprise. The master was fully justified in refusing to reopen the accounting.

[2] On the accounting. the complainant waived and abandoned all claim to profits, and relied on proving damages based on the claim that it had an established and substantially uniform license fee of $1.10

per cubic foot for digester linings made and put in under the patent in suit, which complainant alleged and alleges was the proper measure of damages. The special master has found that the evidence does not establish any uniform or fixed license fee, and that, as complainant has waived all claim to profits and it has not been shown that defendant derived any advantages by reason of the infringement of the patent in suit, the complainant is entitled to recover nominal damages only. This is finding 20, and reads as follows:

"20. From the foregoing facts I find complainant has failed to prove an established license fee for the lining of digesters under the patent in suit at the time defendant commenced to infringe said patent and as the complainant has waived all claim to profits, and as it has not been shown that defendant derived any advantages by reason of said infringement, I therefore report that in my opinion the complainant is entitled to recover nominal damages only."

It appears in the case that the complainant had another patent granted to one Jurschina, assignor of one-half to one Kammann, No. 379,580, dated March 20, 1888, for "self-hardening cement," the claim reading:

"The herein described composition of matter, consisting of silica and water-glass—i.e., sodium or potassium silicate—to which my hydraulic cement may be added, substantially as and for the purpose specified."

The specifications say:

"This invention relates to and consists in a novel self-hardening composition or cement, consisting, essentially, of finely-ground quartz (silica) and water-glass (potassium or sodium silicate), or the said elements combined with Portland or other hydraulic cement. The object of this invention is to produce a self-setting and hardening compound adapted for use in molding, reproducing fac similes of objects of art, and other purposes—as, for instance, for purposes of printing."

The licenses granted by the complainant and paid for by the licensees in nearly every instance, if not in all instances, covered and granted the right to use the processes and products described in both patents, and there was no division of the license fee paid. Hence it was impossible to determine how much was paid in any instance for the license under either patent.

The complainant contended, and contends, that the Jurschina patent is for a mere structural detail in case it is valid, and that it cannot be assumed a license under it in connection with the license for the use, etc., of the Russell patent had any value. There is no proof that the Jurschina patent had no value, or that the use of the patent, etc., was of no value. The right to work under and according to both patents was granted to the several licensees for a single consideration, and I am unable to see that a court or master is justified in holding that that which has been sold for a valuable consideration is worthless. Unless it was, there is no evidence of an established license fee for the Russell patent. It is not contended that defendant infringed the Jurschina patent.

But under the evidence and the finding of the master the complainant's difficulty lies deeper than this. The testimony of the complainant of an established license fee for the Russell patent came in the main from George W. Russell, president of the complainant company and

certain licenses granted by complainant. Prior to the commencement of this suit, the complainant, American Sulphite Pulp Company, filed its bill of complaint against the Hinckley Fibre Company, which was verified by said George W. Russell, and in which the question whether or not said complainant had an established license fee for the Russell patent was directly involved. In that bill we find the following allegation:

"That it has not been possible to establish and that your orator has not established a fixed, certain or uniform license fee for said licenses, for the reason that it appeared to your orator to be inequitable and unjust so to do, but that your orator has sought to obtain and has obtained in every case a license fee satisfactory in amount, both to itself and to its licensee, with reference to the size and character of the work carried on, the particular circumstances of each case determining what was a reasonable fee for the license in question."

I think the evidence shows that Russell was correct when he made and verified that statement. In December, 1900, an agreement was entered into between the complainant and one Stebbins wherein it was agreed that the fixed price to be charged by Stebbins acting for complainant for licenses under the Russell patent should be $1.10 per cubic foot, measured on the inside of the vessel to which the lining was to be applied. But no licenses were sold under that agreement, and those who had occasion to use the invention of the Russell patent did not acquiesce in the reasonableness of the royalty charged. These facts do not fix an established license fee as a measure of damages between these parties.

The infringement by defendant occurred as follows, as found by the master, which finding is fully sustained by the evidence:

"(2) The defendant the De Grasse Paper Company was organized March 12, 1903, and on April 27, 1903, acquired the property of the Pyrites Paper Company, which company was the successor of the High Falls Sulphite Pulp & Mining Company of Pyrites, New York. Included in the assets acquired by the defendant company were four pulp-digesters designated as Nos. 1, 2, 3, and 4. Digesters Nos. 1 and 2 were licensed by complainant to the High Falls Sulphite Pulp & Mining Company, therefore leaving digesters Nos. 3 and 4 only to be considered upon this accounting. The said digesters Nos. 3 and 4 were relined during the year 1900 by the Pyrites Paper Company, and, as heretofore stated, were acquired by defendant company April 27, 1903, upon which date infringement by defendant began. Such infringement by defendant consisted in continuing to use said digesters Nos. 3 and 4 as they were relined by the Pyrites Paper Company in January, 1900, from the date, April 27, 1903, when the defendant purchased the mill until the summer of 1907, when the defendant removed the infringing linings and substituted for them two other linings constructed as described by the witness Swanton and the witness Shulice at pages 51 and 107 testimony before the master."

Prior to March, 1903, the date of defendant's first infringement, the complainant had of over 200 licenses actually granted sold as testified to by Russell 8 licenses to various parties (see master's finding 18), charging and receiving therefor all the way from 86 cents per cubic foot to $1.35 per cubic foot. It is unnecessary to go into the circumstances surrounding the grant of the other licenses, about 200, and the considerations therefor. They tend to show no regular or fixed license

fee had been established. Eight sales of a license from October, 1899, to October, 1902, for the use of two inventions covered by two distinct patents at from 86 cents to $1.35 per cubic foot, no division of consideration for each invention being made, out of over 200 licenses granted for various other considerations having no uniformity whatever in value, and no fixed or stated money value, do not in my judgment prove an established license fee for licenses under this Russell patent. See Rude v. Westcott, 130 U. S. 152, 132, 9 Sup. Ct. 463, 468, 32 L. Ed. 888. In Fox v. Knickerbocker Engraving Co. (C. C.) 158 Fed. 422, 427, affirmed by C. C. A., 165 Fed. 442, 91 C. C. A. 386, this court had occasion to discuss this question of uniform established license fee as a measure of damages, and sees no occasion to repeat. There is no evidence here of an established license fee for one period of time and then a change to another for another fixed period, nor is there evidence to justify a departure from the alleged fixed fee of $1.10 on the eight occasions referred to.

I think the case as it stands demands that the complainant's exceptions be overruled and the master's report confirmed, and that the complainant pay the master's compensation and disbursements which are fixed as follows: Compensation forty days services, $1,000, and disbursements $331.32, total $1,331.32, to the extent of two-thirds thereof or $887.54, and the defendant pay the balance or $443.77.

Ordered accordingly.