Elrod Slug Casting Machine Company v. Commissioner.
Elrod Slug Casting Mach. Co. v. Commissioner
Docket No. 5219.
United States Tax Court
1948 Tax Ct. Memo LEXIS 229; 7 T.C.M. (CCH) 157; T.C.M. (RIA) 48041; March 26, 1948
*229 Petitioner, a personal holding company, was the owner of certain patents and patent rights to a slug casting machine. In 1923, petitioner assigned all its right, title and interest in and to the patents and patent rights covering the slug casting machine in certain foreign countries other than Canada. The consideration therefor was to be paid by way of "royalties" until the aggregate amount paid equaled the sum of $50,000. In the taxable year petitioner received the sum of $1,234 under such contract. In 1920, petitioner licensed the Ludlow Typograph Company, to manufacture and sell such machines in the United States and Canada on a royalty basis. Concurrently therewith, petitioner turned over to Ludlow certain jigs, dies, patterns and special tools without payment therefor. Petitioner claims the right to amortize, in the taxable year, 1/22 of the costs of the Ludlow contract. Held: (1) The assignment in 1923 of the foreign rights effected a sale of a capital asset. (2) Claims for amortization deductions in the taxable year disallowed for failure of proof. Edward G. Garvey, Esq., for the petitioner. Harlow B. King, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies and penalty for the calendar year 1940, as follows: Income tax
$687.38
Personal holding company surtax
280.09
Penalty for failure to file personal
holding company tax return
70.02
The case was submitted on oral testimony and exhibits. The assignments of error as set forth in the original petition were: 1. Did the Commissioner err in increasing royalties on foreign patents in the amount of $617? 2. Did the Commissioner err in disallowing depreciation claimed on patents in the amount *231 of $3,814.09? 3. Did the Commissioner err in determining that petitioner was liable for surtax as a personal holding company? By amended petition filed November 4, 1946, petitioner sets forth the following assignments of error: A. The Commissioner erred in increasing foreign royalties received in the amount of $617. B. The Commissioner has failed to allow the amortization cost of petitioner's Ludlow contract, including a license agreement in the amount of $3,052.75. C. The Commissioner erred in ruling that petitioner is subject to the personal holding company surtax and penalties. At the hearing petitioner conceded all the issues above set forth except as to those set forth in paragraphs "1" and "A", which are identical, and paragraph "B". Findings of Fact Petitioner is a personal holding company, located in Lincoln, Nebraska. On or about March 8, 1941, it filed corporate income, declared value excess-profits and excessprofits tax returns for the calendar year 1940 with the collector of internal revenue at Omaha, Nebraska. Petitioner did not file a personal holding company return, Form 1120-H, for such calendar year. On February 10, 1923, petitioner, as party of the *232 first part, and B. S. Elrod, the inventor, as party of the second part, entered into a certain contract with the Ludlow Typograph Company, of Chicago, (hereinafter referred to as "Ludlow") as party of the third part. This agreement, inter alia, contained the following provisions: "1 - The party of the first and the party of the second part hereby agree to assign, transfer and set over to the party of the third part by good and sufficient instruments of assignment, all their right, title and interest in and to all patents, applications for patents, inventions, improvements, conceptions and ideas covering the said lead and rule casting machine or any part thereof which forms the subjectmatter of the aforesaid license agreement of January 1, 1922, excepting only the Letters Patent issued by the United States of America and the Dominion of Canada, it being the intention to include all foreign patents and applications for patents, especially those issued by and pending in Argentine, Australia, Belgium, Brazil, Denmark, France, Germany, Great Britain, Italy, Japan, New Zealand, Norway, Sweden and Switzerland. Said assignments shall be executed and delivered by the party of the first part *233 and the party of the second part as soon as possible and in any event on or before March 1, 1923. * * *
"3 - The party of the third part agrees to pay to the party of the first part a royalty of ten per cent upon the sale-price of all such lead and rule casting machines and moulds sold by it in any country except the United States of America and the Dominion of Canada until the aggregate amount paid by way of such royalties shall equal the sum of Fifty Thousand Dollars ($50,000.00). "4 - The party of the third part agrees that in case it makes any outright sale of any of said patents or patent rights, it will pay to the party of the first part one-fourth of the amount realized therefor. Any amount so paid to the party of the first part shall be credited upon the aforesaid amount of $50,000.00 representing the maximum amount of royalties to be paid hereunder. "The party of the third part agrees that no outright sale of any of said patents or patent rights shall be made for less than the amounts named herein, without the written consent of the party of the first part: Great Britain
$100,000.00
France
25,000.00
Belgium
15,000.00
Italy
15,000.00
Switzerland
10,000.00
Germany
20,000.00
All other countries
15,000.00"
*234 The assignments required by said agreement were duly executed and delivered by petitioner. During the taxable year 1940, petitioner received from Ludlow under said agreement the sum of $1,234. Petitioner reported $617 as income and claimed the balance represented the cost of said patents. The respondent included the entire sum of $1,234 as income. On December 31, 1918, pursuant to an application, the Nebraska State Railway Commission entered an order providing, in part, as follows: "IT IS THEREFORE ORDERED by the Nebraska State Railway Commission that the Elrod Slug Casting Machine company of Omaha, Nebraska, be and the same is hereby permitted to sell $100,000 of its 8% preferred participating stock of the par value of $100 per share at par, and to assign to Messrs. Benjamin S. Elrod, Lee Hurdman and Jas. E. Rait $100,000 of the common stock of said company in payment for the assignment to said company of the patent rights to the Elrod machine and in payment for their services in developing the device and bringing it to its present development, all of which is subject to the following conditions: * * *
" Pursuant to the aforesaid order, preferred stock was sold to the *235 public. In the first part of 1919, petitioner started its factory. All equipment necessary to make the slug casting machine, including machines, tools, dies, jigs, and patterns, was acquired either by purchase or made by petitioner. On July 15, 1920, petitioner entered into a written contract with Ludlow under which the latter was to make and sell the slug casting machines upon a royalty basis. This agreement provided, in part, as follows: "11 - If during this agreement, the second party shall make an improvement in said machine or molds or in the mode of using the same, or shall become the owner of such improvement, it shall communicate such improvement to the first party, and the first party shall have the right to use the same upon the machine or mold should this agreement be terminated." "12 - The first party has now a number of incomplete machines and some material on hand which the second party agrees to pay for at cost of manufacture and purchase price, and the first party agrees to turn over to the second party all unfilled orders, and hereby credits the second party as payments on royalties hereunder all cash received by the first party on unfilled orders, less agents' *236 commissions. The first party gives to the second party the right to use its factory in Omaha until the second party is ready to manufacture in its own plant, the second party to pay operating costs during its period of occupancy and use. The second party shall have the right to remove to its own plant the patterns, jigs and special tools of the first party without payment therefor." * * *
"19 - This contract shall commence upon the date of signature and continue for a period of two years, and shall be automatically renewed for two year periods during the life of the United States patent, less one day, if, during each two year period, the second party has manufactured and sold 500 machines; Provided, the second party, at its option, may terminate the agreement at the end of any two year period upon giving six months' notice in writing." * * *
"21 - In the event of a termination or cancellation of this contract for any cause, the first party shall become the owner and entitled to immediate possession of all jigs, templets, patterns and drawings used by the second party in the manufacture of this machine." Immediately after the execution of the aforesaid contract, Ludlow *237 took over the plant of petitioner and continued to manufacture the slug casting machines until January 1, 1921, when it knoved all the patterns, dies, jigs and tools to its Chicago plant. During the time petitioner was operating its plant, it was changing its patterns and other equipment made necessary by continuous changes made to perfect the slug casting machines on which the basic patent was issued on December 19, 1922. The equipment turned over to Ludlow was used in connection with the basic patent, and to some extent was unsuitable for use in connection with the improved machines on which a patent was obtained on December 29, 1925. While petitioner, during the time it was engaged in manufacturing the slug casting machines, kept regular books of account, their present whereabouts are unknown. George W. Elrod, one of the original inventors, and who was actively engaged in the manufacture of the machines up to the time Ludlow took over the manufacture and sale of the machines, testified that petitioner had expended at least $30,000 in procuring and manufacturing the necessary jigs, dies, patterns and special tools required in the manufacture and improvement of the machines. However, *238 Elrod was unable to state how these expenditures were treated on petitioner's books. He had never examined the books and had no knowledge whether such expenditures had been capitalized or treated as ordinary and necessary business expenses. Petitioner's original cost of the jigs, dies, patterns and special tools was not less than $30,000. Opinion The first issue presented is whether the sum of $1,234, received by petitioner in the taxable year, represents an installment payment from the sale in 1923 of foreign patents and patent rights, as petitioner contends, or constitutes "royalties," as argued by the respondent. We think the position taken by petitioner is the correct one. The agreement specifically provides for the assignment of all of petitioner's "right, title and interest" in and to all patents, etc., covering the lead and rule casting machines in the foreign countries therein specified. The record establishes that such assignments were executed and delivered by petitioner as required in such agreement. The respondent relies heavily upon the fact that the agreement provides for the payment of a royalty of 10 per cent of the sale price until the aggregate amount paid by *239 way of "royalties" equals the sum of $50,000. Labels are not determinative. R. H. Stearns Co. v. United States, 291 U.S. 54. The purchase price of an assignment may be by way of royalties instead of a definite fixed sum. Rude v. Westcott, 130 U.S. 152. The assignment of "all their right, title and interest" effected a sale. Waterman v. Mackenzie, 138 U.S. 252; United States v. General Electric Co., 272 U.S. 476; Edward C. Myers, 6 T.C. 258. That complete ownership of the foreign patent and patent rights was transferred is further evidenced by paragraph 4 of the agreement. It is provided therein that, in case of resale by the assignee of such patents, petitioner was to be paid an additional amount in excess of the $50,000. We conclude that the sum of $1,234, which petitioner received in the taxable year 1940 under its contract of February 10, 1923, was proceeds from the sale of a capital asset and not "royalties" within the meaning of section 502 (a) of the Internal Revenue Code. The remaining issue is whether petitioner is entitled to any deduction in the taxable year as amortization of its *240 licensing agreement dated July 15, 1920. This issue was raised for the first time by amended petition. Petitioner concedes the total depreciation allowable under its basic patent issued December 19, 1922 was exhausted in the prior taxable year. Petitioner now contends that it is entitled to deduct the sum of $1,636.36, or 1/22 of $36,000, which latter sum is the difference between $100,000 it claims as the cost basis for the acquisition of the Elrod invention and the cost basis of the patent which it contends was $64,000. The only proof contained in this record upon this issue consists of three documents: (a) The agreement of July 15, 1920, licensing Ludlow to manufacture and sell the slug casting machines. We find nothing in this agreement bearing on the issue in question. Furthermore, it appears doubtful whether this is the final agreement between the parties, since the petition refers to "amendments thereto," which were not offered in evidence. (b) The second document is a certified copy of an order issued by the Nebraska State Railway Commission authorizing petitioner to issue to certain individuals $100,000 of its common stock for the assignment to it of the patent rights to the *241 Elrod machine and for their services in bringing the device to its present development. It contains no other facts bearing on the issue in question. (c) The third document is a copy of a memorandum opinion of Judge Donahoe, of the United States District Court, rendered in a suit between petitioner and George W. O'Malley, collector of internal revenue, dated September 15, 1944, and officially reported in 57 Fed. Supp. 915. In placing this document in evidence, counsel for petitioner stated the offer was made for the convenience of the Court. While this opinion contains certain facts having some bearing on the issue in controversy, it is not available here as proof of those facts. It is not the final judgment entered in that suit. We think it is merely evidence of the fact that Judge Donahoe, in that suit, directed judgment in favor of petitioner. It is not proof of the facts stated therein, nor may we take judicial notice of those facts. Petitioner has the burden of establishing in this proceeding the facts necessary to support its claim. This record fails to carry such burden. Petitioner's claim for amortization, in the amount of $1,636.36, is denied for lack of proof. *242 Petitioner also claims to be entitled to an amortization deduction of the amount of $1,363.63 in the taxable year. This amount is 1/22 of the sum of $30,000, which petitioner claims as the cost of certain jigs, dies, patterns and special tools which it turned over to Ludlow under the aforesaid licensing agreement of July 15, 1920, without payment therefor. Based upon the record, we have found as a fact that petitioner's cost of such articles was $30,000. However, the record establishes that the books kept by petitioner respecting such items were unavailable. The witness, Elrod, who was one of the original parties and familiar with the manufacture and acquisition of the jigs, etc., was permitted to give secondary evidence of their cost to petitioner. He stated he had never examined the books and had no knowledge whether such costs had been capitalized or charged off in the respective years as ordinary and necessary business expenses. We conclude that petitioner's claim for amortization in the taxable year of the sum of $1,363.63 has not been established and is denied for failure of proof. Petitioner having conceded that it was a personal holding company and that it failed to file *243 a personal holding company return in the taxable year, the imposition of the 25 per cent penalty prescribed in section 291 of the Internal Revenue Code is mandatory. Vahram Chimchirian, 42 B.T.A. 1437. Decision will be entered under Rule 50.