DIAMOND STONE SAWING MACH. CO. OF NEW YORK v. DEAN et al.

(Circuit Court, E. D. New York. October 10, 1901.)

PATENTS—VALIDITY AND INFRINGEMENT—STONE SAWING MACHINES.

The Williams patent, No. 429,874, for improvements in diamond stone sawing machines, and in methods of operating the same, while describing a machine in which theoretically there is an exact correspondence between the feeding movement and the progress made by the saw blade through the material, cannot be limited to one in which there is such exact correspondence at all times in practical operation, which would be impossible of attainment with the machine shown, in which there is no such unyielding fixity of the parts as would prevent the yielding of the saw blade by reason of its resiliency or the elasticity of the frame, and its cutting with greater rapidity at some times than at others. Such patent construed, and *held* not anticipated, valid, and infringed, as to claims 1, 2, and 3.

In Equity. Suit for infringement of patent. On final hearing.

Benjamin F. Lee and Charles C. Protheroe, for complainant.

Edwin H. Brown and James C. Chapin, for defendants.

THOMAS, District Judge. The complainant is the owner of letters patent No. 429,874, issued to George N. Williams, Jr., under the date of June 10, 1890, pursuant to an application filed November 29, 1886, for "improvements in diamond stone sawing machines and in methods of operating the same," and alleges infringement by the defendants of claims 1, 2, and 3. The answer denies. infringement and invention, and alleges prior knowledge and use. The Williams mechanism, as illustrated by the letters patent, is a modification of what were known as "Young's Diamond Saws," by the elimination of certain parts thereof, and the addition of certain other parts. The defendants' saw is also of the Young manufacture, modified, as alleged, so as to bring it within the patent. On November 17, 1886, an application for the same invention was filed by Henry Rudolph, and an interference between this and the Williams application was declared on the 5th of September, 1887. On the 31st of December, 1889, the commissioner of patents affirmed the decision of the board of examiners in chief, which found priority of invention in Williams.

Thereafter Rudolph filed a bill against Williams in the Southern district of New York, under section 4915 of the Revised Statutes, and on the 6th day of December, 1893, Judge Coxe found priority of invention in Williams. (C. C.) 62 Fed. 577. Previous to the Williams invention the Young's diamond saw, above mentioned, cut during one movement, because it was pressed down upon the stone, and was inoperative during the opposite movement by reason of the fact that a lift mechanism relieved the downward pressure, and allowed the saw to spring out of contact with the stone. Williams eliminated the lift mechanism, thereby permitting the saw to cut on both strokes. Williams used the existing feeding mechanism, but made such duplication of the parts actuating the same that the saw was fed to the stone during both its movements with intended correspondence to the speed at which the saw blade moved. These changes, illustrated by the Williams patent, went into general use, and were adopted by the defendants.

The claims involved are as follows:

"(1) The herein described method of feeding the reciprocating saw blade of a stone sawing machine, which consists in imparting to said saw blade during its forward and backward movements a forward or feeding movement during both its backward and forward strokes, said feeding movement corresponding in extent to the speed at which the saw blade is moving forward or back at all times, substantially as set forth. (2) In a stone sawing machine, the combination, with the diamond-toothed saw blade and its sash, of means for imparting to said sash a reciprocating movement in a straight line throughout its entire stroke, a screw mechanism for positively feeding the saw blade up to its work, and means for actuating said feeding screws during both the forward and backward strokes of the saw, whereby the saw blade is fed up to its work intermittently during both its reciprocating movements. (3) In a stone sawing machine, the combination, with the saw blade and its sash, of means for imparting to said sash a reciprocating movement in a straight line throughout its entire stroke, a ratchet mechanism operating means for feeding the saw blade up to its work during its forward stroke, and a ratchet mechanism operating means for feeding said blade up to its work during its backward stroke, substantially as set forth."

Do the defendants' machines fall within the Williams patent? A distinction is claimed to be found, in this: that Williams provided for a rigid blade to which is applied a positive feed, while the defendants' blade is elastic, so that a positive feed is not and cannot be applied to it. Respecting this, defendants' expert states that in the defendants' machine the saw is supported at the end in such a manner as to afford an elastic or yielding support, so that by placing levers beneath defendants' saw blade, and bearing down the blade thereon with moderate force, the blade could be lifted about a quarter of an inch, and would afterwards spring back to its original position; that, while the saw was at work, if the feed were thrown out of operation the saw would continue to cut the stone for forty strokes; that "the feed screws were not then being turned at all; the saw then being pressed against the stone by its own elasticity or that of the support or both, and by this means only was caused to do effective cutting." This witness further states that he observed that upon starting the saw, and during 100 strokes, the amount of the descent of the saw was about one-quarter of an inch, and during the following 100 strokes the saw descended a half inch, illustrating that

during the first 100 strokes "there was apparently a quarter of an inch of the motion imparted by the feed taken up by the saw and its support, through their elasticity." He adds this comment:

"The effect of an elastic feed instead of a positive feed in such a stone sawing machine is, in my opinion, practically to destroy any correspondence between the extent of feed and the extent of speed, such as is referred to in the first claim of the patent in suit. No matter how carefully the operating mechanism may be organized for the purpose of causing such a correspondence, the result sought, if the saw is not fed positively, will not be gained. The elastic part of the mechanism (saw blade or support) becomes a reservoir in which the applied force is accumulated, and the expenditure afterwards of this force to produce effective cutting is then regulated not by control directly exerted by the force-conveying mechanism, but by the resistance which the saw is called upon to meet. If, for example, the work cut happens to be of varying density and hardness, the softer portion of the stone will be more readily overcome and cut, and the feed will be more rapid, and hence greater in extent per given time, than when the saw encounters harder portions of the same stone. This will serve as an illustration of how the feed may vary in an entirely irregular way in point of extent, and bear no relation to the extent of variation of the speed, which is due simply to the arrangement of the sash-driving mechanism. It will be seen, therefore, from the foregoing, that the presence of the elastic feed in the defendants' machine not only distinguishes it from the structure of the second claim, in which a positively feeding mechanism is essential, but that because of that fact, also, the correspondence of extent of feed and extent of speed which is essential to the method of the first claim is also in defendants' machine practically eliminated."

The defendants use the foregoing evidence to illustrate that their machines do not fall within the invention in suit, which, as they urge, provides for a mechanism "where the ratio of feed at any given time always corresponds with the speed of the saw in its reciprocation," and one "where the downward pressure on the blade on each stroke at any time is equal to the downward pressure of the blade on that stroke at any other time, and the aggregate downward pressure on one stroke is equal to the aggregate downward pressure on the other stroke," and that this describes proportionate feed to the saw blade, and renders the same inelastic and positive in its action. That such is the meaning of the Williams invention is shown by the evidence of Williams, the inventor. The defendants also elicited evidence from Hugh Young, the inventor and builder of the defendants' saws, and of the saws upon which the improvement is claimed by Williams, that the proportionate feed, as above described, is impracticable, because the elasticity claimed for the defendants' machine must to some extent exist in the machine for which the invention intends to provide. It would thus appear that both the defendants' machine and the machine purporting to be covered by the patent may feed more on one stroke than on the other. A test made by the complainant's expert upon a machine as illustrated in the following evidence leads to the same conclusion:

"Q. 6. Subsequent to your examination of the Dean machine referred to in your last answer, did you make any experiments with the Hogan saw upon the same general lines as the experiments made by Mr. Benjamin with the Dean saw; and, if so, please state the results of such experiments? A. I made such experiments with the Hogan saw on December 17, 1896, and again on June 29, 1899. I found it took a perceptible period of time at the beginning of the operation of the saw before the machine got to its normal

working tension. After that it did uniform cutting. I had the feed thrown off, the machine being kept in motion, and I found that there was a corresponding period of time during which the saw continued to cut after the feed ceased. My figures would average about one-quarter as large as those given by Mr. Benjamin. In repeating his crowbar experiment, with three men working it, got one-eighth of an inch, instead of his one-quarter inch."

He further states that:

"The positive feed referred to in the patent is obviously of such a nature as the machinery is capable of. The word 'positive,' when used in this connection, is therefore used in a practical sense. I do not understand that any definition of the word 'positive' in this connection precludes the idea of elasticity of the parts through which the motion is positively transmitted. The operation of the machine, like the Hogan saw as it now exists in the Williams yard, and of the Dean machine spoken of by Mr. Benjamin and examined by me, is such as to have a positive feed, in the proper sense of the term. When the machine is first put in operation, the force, for a certain period of time, is expended in overcoming the elasticity of the parts. When this force has effected a proper working tension, the parts, including the saw blade, become inelastic and positive in their action. I therefore find the positive feed of the patent in suit in the defendants' machine, as well as in the Hogan saw in the Williams' yard, and I disagree with the views of Mr. Benjamin expressed on that subject. I have not overlooked what Mr. Benjamin has stated in regard to the drawing Fig. 1 of the patent in suit, in which he says: 'The saw blade is secured to these blocks by bolts, which in Fig. 1 of the drawing appear to be imbedded in the material of the blocks. There is therefore a rigid connection between the blade and block, so that when the blocks are moved by the feeding screw the saw must go with them.' I find that nothing of the kind is indicated in the drawing. The specification is wholly inconsistent with what Mr. Benjamin says on this subject. The then familiar Young diamond stone saw of the Hogan type is clearly referred to in the specification, and the parts referred to by Mr. Benjamin form parts of that old machine. What is described in the specification and drawings of the patent where these parts are referred to is shown in Complainant's Exhibit Saw Blade and Its Supports."

The fact seems to be that the defendants' mechanism in all essential particulars is that described by the specifications, nor does it appear that the claims are limited to a saw that is so fixed at its extremities that in practical operation there must be an exact correspondence between the feeding movement and the movement of the blade. The evidence tends to show that such a condition would be practically impossible of attainment, and, if the claims necessarily involve a machine of that kind, there can be no fulfillment of the claims, and defendants' machines do not come within them. It is thought, however, that, while it was the intention of the claims to secure a patent for a device that would theoretically produce this result, it was not contemplated that there should be such nice and fine adjustment and unyielding fixity of material and parts that such result must inevitably ensue. The first claim states, "said feeding movement corresponding in extent to the speed at which the saw blade is moving forward or back at all times." The second claim provided for a mechanism whereby the saw blade is fed up to its work intermittently during both its reciprocating movements. And the third claim uses similar language. The force conveyed from the feeding mechanism to the saw may press the saw directly upon the stone, so that the force is spent uniformly, or the resiliency of the saw blade or the elasticity of its adjustment and the yielding of the

structure to the strain may interrupt temporarily the uniform consumption of force, thereby storing, to a degree, the same, with the result of giving it forth during the progress of the work, or the saw may be continued out of its right line of action for a greater or less period. Nevertheless during such suspension of normal operation the feed is communicated to the saw and its supports with a general uniformity, producing in its then condition the positive feed for which it is contended the claims provide, but at all times keeping the saw up to its work. The fact that the feed is not consumed as delivered, and as fast as it is delivered, by reason of the yielding of the machinery by the varying obstructive force of the stone, does not take the defendants' machines out of claim 1, and claims 2 and 3 do not require it. Therefore it is concluded that the defendants' machines infringe the patent, and the remaining questions relate to the validity of the patent.

Does the Williams device show invention? The conclusion is reached that Williams provided a mechanism to "feed the saw to the stone during both its strokes in a positive and regulated manner, so that it cuts when moving in either direction," whereas previously the saw formerly operated successfully in one direction, being fed either in a forward or a backward stroke. To accomplish this result, Williams removed the lifting appliance, and left the immediate feeding device intact, but duplicated its actuating mechanism. These changes resulted not only in the saw cutting in both directions, but in greater uniformity, continuance, and completeness of action during the stroke. However, the great practical gain was in the operation of the saw in both directions. It is urged that the removal of the lift and such duplication of the actuating mechanism as was had did not amount to invention; but such claim cannot be supported, in view of the fact that with all practicable speed the improvement was adopted, and has been generally and persistently continued, and that with the obvious advantage of increasing the capacity of the saw. Moreover, no earlier successful conception and adoption of the device is shown. The evidence on this subject sufficiently favorable to the defendants to demand discussion relates to patent to Luce & Green, No. 85,317, and to certain Young patents, and the Foerster patent of 1886, No. 340,205, of April 20, 1886. The Foerster letters state that:

"The invention consists of a machine for sawing stone, in which a reciprocating sash that supports the saw blade is raised by suitable mechanism at the end of each stroke, and lowered at the beginning of the next stroke, so that the kerf can be cleaned of débris, while the saw exerts a cutting action on both the forward and return stroke. The invention consists, further, of a mechanism for feeding the saw blade forward at the end of each stroke and of a novel construction of sash, as will be more fully described hereinafter, and finally pointed out in the claims. * * * The eccentric portions of the toothed flanges, $b_1$, $b_1$, are so arranged that when the sash arrives near to the end of each stroke it is lifted by the eccentricity of the flanges sufficiently to withdraw the blade from the kerf of the stone and permit the débris to be washed away by the water supplied to the kerf. At the beginning of the next stroke the sash and its blade is lowered again. * * * "The operation of the machine is as follows: When the block of stone has been placed in position on its carriage, the blade is adjusted in proper

position thereto by the shaft, $F_1$, and its transmitting gearing. The driving shaft is then started, so that the sash commences its stroke. When arriving nearly at the end of the forward stroke, it is lifted by the toothed eccentric flanges of the rollers, so as to clear the kerf sufficiently for removing the débris. The saw commences then its return stroke, and is lowered again into the kerf, exerting a cutting action thereon until it arrives nearly at the end of its return stroke, when it is lifted again to give a clearance for the removal of the débris. At the end of each stroke the blade is fed forward by the alternating action of the pawls, $h_2$, $h_4$, on the ratchet wheel, $h_3$. By lifting the saw at the end of each stroke and lowering the same at the beginning of the next stroke, and by imparting a forward feed to the saw at each end of the stroke, the saw exerts a cutting action during the forward stroke and return stroke, and accomplishes thereby the sawing of the stone in a quicker and more effective manner than when the saw is lifted from the kerf and moved clear of the same during the return stroke, as heretofore."

The complainant points out the following alleged differences in the Foerster device from the patent in suit: The Foerster machine (1) does not reciprocate in a straight line throughout its entire stroke, nor is there means provided for such action; (2) the sash is raised near the end of each stroke, so that the blade is inoperative during the feeding operation; (3) the feed is delivered at the end of each stroke, and not through the entire stroke, and no means is provided for actuating the feeding movement otherwise than at the end of the stroke. The complainants' contention is well founded. Foerster provided for cutting on two strokes and for feeding at the end of the stroke, but feed through the entire stroke is absent, and there is no proportionate feed. It is apparent that the Foerster machine is quite distinguishable from that of Williams. Letters 85,317, issued to Luce & Green in 1868, provide for a machine that met with no specific and practical adoption. The construction of four machines, as claimed, was undertaken, although all do not seem to have been completed, in general conformity to the Luce & Green patent, and one of these was operated for a few weeks; but there is much conflict of evidence respecting the means by which the feed was delivered, and whether it operated on both strokes and was positive. The uncertainty of the evidence is such that it is quite sufficiently favorable to conclude that they fell within the specification of the Luce & Green patent. Therefore to such specification resort must be had. Such specifications provide (1) for a diamond reciprocating saw, for the cutting of the blade in both directions; (2) for a cross head or pressure bar to transfer the necessary feeding movement to the saw. Neither the description, diagram, nor claims illustrate that there was positive feed, although its presence might be established by argument and inference; and it is certain that there is no suggestion "of means for imparting to said sash a reciprocating movement in a straight line throughout its entire stroke," as provided in the second and third claims of the letters to Williams. This state of the record would not justify the conclusion that the letters issued to Luce & Green, or the machines built pursuant thereto, anticipated the patent in suit. Letters No. 107,847, of 1870, and No. 224,760, of 1880, issued severally to Hugh Young and to James L. Young and Hugh Young, do not appear to the court to show prior use.

111 F.—25

After a somewhat prolonged study of the record and the considerations presented by the parties, the conclusion is reached that complainant's claims Nos. 1, 2, and 3 are valid, and that they are infringed by the defendants' machines, and that the complainant should have the injunction relief asked, with an accounting. In reaching this conclusion, the various contentions of the defendants have not been denied attention.