DIAMOND STONE SAWING MACH. CO. v. BROWN et al. SAME v. MORRISON et al. SAME v. BRADLEY et al.

(Circuit Court, E. D. New York. April 7, 1904.)

1. PATENTS—PATENTABLE NOVELTY—STONE SAWING MACHINE.

An improvement in mechanism for sawing stone by which the saw is moved against the stone, which remains at rest during the operation, instead of being fed to the saw as in machines of the prior art, discloses patentable novelty and utility.

2. SAME—CONSTRUCTION—INFRINGEMENT.

The Williams patent, No. 429,874, for a stone sawing machine, was not anticipated, and discloses patentable invention. Claims 2 and 3, construed in the light of the specification and drawings and the requirement of means "for feeding the saw blade up to its work," *held* to require as an element a proportionate feed, with respect to the speed of the saw during the stroke. Claims 1, 2, and 3 also *held* infringed.

In Equity. Suit for infringement of letters patent No. 429,874 for a stone sawing machine, granted to George N. Williams, Jr., June 10, 1890. On final hearing.

Man & Protheroe (Charles C. Protheroe, of counsel), for complainant B. F. Lee.

Seabury C. Mastick (Seabury C. Mastick and Arthur v. Briesen, of counsel), for defendants.

THOMAS, District Judge. It cannot be justly urged that the saw used by the defendants before the bill was filed did not infringe the claims of the patent, inasmuch as Dietrich testifies that such was the fact, and no evidence is offered in contradiction. The evidence of Dietrich is sufficient, in the absence of any counter evidence tending to diminish whatever force it has. The reference to patents (other than those considered in the Dean Case [C. C.] 111 Fed. 380) antedating that in suit show several where the material is fed to the saw. Marston, Palmer, and Le Marchand are of this nature. While these enumerated patents differ in some other respects from the complainant's patent as described in some of the claims, they all provide for feeding the material to the saw, and are thereby differentiated. There does seem to be a substantial difference between means for pressing a saw reciprocating in a straight line to the stationary material and a mechanism whereby material of great bulk and weight is laboriously lifted into relation with the saw. If it had never been known that any object could be mechanically sawed save by reciprocating the material across the sharp edge of some harder substance relatively much lighter in weight, and some person discovered that the same result could be attained by a method that would send a light, keen blade forward and backward through the substance, a very decided advance in the art of sawing would be admitted, and the doctrine of equivalents would not be invoked successfully. In the references the material is not reciprocated, but is ponderously lifted or pushed against the blade. Means contrived to leave the great weight at rest, and to press the relatively light and rapidly cutting saw to it, according to due necessity, on the face appears a better and improved means of doing the work. Surely the swift and light tool is better pressed to the unwieldy stone, the saw to the log, than the awkward and bulky block or tree carried to meet the cutting tool. Any person who should discover a means of reversing the object moved, so as to move the lighter and leave at rest the heavier subject of the operation, would invent something very useful, and very novel also, if the whole art were shown in the three patents named.

Without further discussion, the new references upon which special reliance is placed are met by this conclusion, except the French patent to Gary. This patent is discussed so scantily by the experts and counsel that there is some difficulty in finding its bearing upon the patent in suit. The specification states:

"L is a star wheel having teeth for turning the screws to the extent to which the saw can descend. M is a stop or ratchet tooth against which the star wheel strikes when the saw is to descend."

The defendants urge that the specification and diagrams show proportional feeding of the saw blade to the stone on each stroke. It is not understood that the specification shows any mechanism to produce proportional feed. Proportional to what? And how is the proportion ascertained and maintained? The complainant's counsel con-

130 F.—57

tend that the saws are fed at the end of the reciprocation by impact of a star wheel upon a stop, and it may be as well applied that way as any other. The letters provide a star wheel for turning the screws, to the extent to which the saw can descend. To what extent it can descend, and when it shall be made to descend, seems to be left to the judgment of the operator. No mechanism is suggested to produce automatically proportionate feed. It is considered that the reference has a very remote, if any, bearing upon the question in issue.

Attention is again called to the Luce & Green patent, No. 85,317. Of this reference it is sufficient to say that the evidence tends to confirm the conclusion reached in the Dean Case.

There remains for consideration the Huffman patent, No. 180,344. Concededly, this does not show proportionate feed, and would not anticipate the first claim. It does show mechanism operating means for feeding the blade, as demanded by the second claim. It has continuous positive feed on both strokes, while the saw blades reciprocate in a straight line. The specification states:

"As thus arranged, the rotation of the pulley V' will, through the pinion V, gear wheel S', pinion S, and gear wheel R, be communicated to the mechanism for moving the saw-frame vertically, and cause said frame to descend, the velocity of such descent being governed by the speed imparted to said pulley, and being easily and quickly varied by changing the driving-belt from one pulley to a larger or smaller pulley."

Mr. Benjamin thinks that it would be effective in connection with diamond saws; Mr. Hooker states that it was intended for stone saws. There is no evidence that it would or would not act effectively with a diamond-toothed saw blade. It provides means for imparting to the saw a reciprocating movement in a straight line throughout its entire stroke; a screw mechanism for, positively feeding the saw blade up to its work; means for actuating the feeding screws during the forward and backward strokes of the saw, whereby the saw is fed up to its work, but not intermittently, during both its reciprocating movements. If it is applicable to diamond-toothed saw blades, and nothing is shown to the contrary, it covers the second claim, except that the saw blade is not fed "intermittently," unless this claim provides for proportionate feed only. It continues to feed until it is stopped, whether the saw be at rest or in motion. But the complainant's machine operates "intermittently during both its reciprocating movements," and this intermittence of action arises from such arrangement of the parts that the feeding mechanism will have motion only when the saw has motion, thereby showing minimum feed at the ends and maximum feed at the middle of the strokes. There are in the second claim no precise words requiring that the feeding movement shall correspond in extent to the speed at which the saw blade reciprocates, as provided in the first claim; but, if the intention of the claim is that the feeding movement shall intermit at the end of each stroke, then there must be some relation between the duration and consequent extent of the feeding movement and the movement of the saw. It seems probable that the patentee intended to have the correspondence between the mechanism feeding and actuating the saw as described in the first claim. In any case, his mechanism as

described and illustrated shows nothing else. If claim 2 means that the feeding mechanism shall intermit when the saw intermits, then the speed of the saw, rising from zero to maximum, and declining to zero, would have a fixed relation to the feed. It is true that the claim might have another meaning, and that the mechanism could be otherwise adjusted; but no other meaning seems admissible in view of the machine displayed and described in the letters. Can it be that the patentee intended in claim 2 to provide for a feeding that was not proportionate? In the letters he says:

"I prefer to so arrange the feed that the saw blade will be fed to the stone in a degree proportionate to the speed at which the saw is moving during both strokes."

Again:

"I prefer to so arrange the feed that it will be at its maximum at the middle of the stroke and at its minimum at the ends thereof. Thus in my machine the feed is at the maximum when the saw blade is moving most rapidly, and when the most advantage is being derived from the momentum of the heavy sash."

What he means by the words in the second claim, "whereby the saw blade is fed up to its work," and by the words "for feeding the saw blade up to its work, * * * substantially as set forth," in the third claim, is illustrated by his statement in the specification. He says:

"Thus rotation of the crank-shaft, while it imparts a reciprocating motion to the saw blade, C, at the same time feeds the saw up to its work through the medium of the pawl and ratchet mechanism last described. * * * The cranks, M and t, on the shaft, K, are so set, relatively, that when the saw blade is moving with the maximum speed (at about mid-stroke) the pawls will move the ratchet wheel o, at its maximum speed. One pawl feeds the saw up to its work on the back stroke, and the other pawl feeds it on the forward stroke."

While the patentee states that he prefers the proportionate feed, there is scanty suggestion of any means for employing disproportionate feed, although, as Mr. Benjamin shows, the old ratchet mechanism used by the complainant could be readily adjusted so as to produce a feeding movement greatest when the sawing movement is least. If claims 2 and 3 cover disproportionate feed, the Huffman patent would be a serious obstacle to their validity. It is true that Huffman does not provide for feeding "intermittently" on both strokes; but a mere provision for a feeding mechanism that intermits is of doubtful novelty. The feed intermits because its actuating mechanism stops. It stops because it is dependent on the mechanism that drives the saw. When one stops, the other stops. That is what happened in the old saw before the lift was eliminated. The vital thought in the mind of the patentee, and for which he made provision in his claims, was that there should be a concurrence of action and speed between the apparatus that fed the saw and the parts that gave the saw motion. If this happened, the feed must be intermittent. While it is not necessary to determine at this time whether the Huffman patent would be an anticipation in case claims 2 and 3 cover disproportionate feed, it is considered that the patentee understood that the saw should be fed up to its work by this correspondence between the movement of the

feed and the saw. As already shown, he uses the expression in the specification in that connection, and must be held to have repeated the words in the claims with the intention of giving them the same significance. The utility of the complainant's invention, so far as it demands proportionate feed, is attacked. The interesting experiments of Mr. Benjamin would be more persuasive had not the defendants persisted in the use of a mechanism that produces proportionate feed, when, by very slight labor, they could adjust their machines for disproportionate feed, as they claim to have done since the bill was filed. Why did the defendants incur the peril of infringing letters patent, why did they disregard the final judgment of this court in earlier cases, unless they preferred the proportionate feed because of its utility?

It is considered that the further objections to the patent should be overruled, and that the complainant should have a decree enjoining the use of the infringing machines, and for an accounting, with costs.