DIAMOND STONE SAWING MACH. CO. OF NEW YORK v. BROWN et al.

(Circuit Court, E. D. New York. August 16, 1907.)

1. PATENTS—MEASURE OF DAMAGES FOR INFRINGEMENT—LICENSE FEE.

An agreement between the owner of a patent and 12 licensees, fixing a uniform license fee to be paid by each for the use of the patented machine, together with the exaction of the same fee from subsequent licensees, is sufficient to establish a general acquiescence in the reasonable-

ness of such fee and to make it a proper measure of the damages recoverable for a subsequent infringement by a stranger to such licenses; but it can be accepted only as fixing the market value of the use of the machine from and after the time when the first agreement was made, and any recovery for infringement prior to that time must be based on other evidence.

2. SAME—INTEREST.

Damages for infringement of a patent can be considered as liquidated, where an established license fee renders such damages easily determinable, but an infringer is liable for interest on such damages only from the date when he incurred the obligation to pay damages, and not from the date when the license fee became payable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 581.]

In Equity. Suit for infringement of a patent. On exceptions to report of special master.

Man & Protheroe (James G. K. Lee, of counsel), Sols., for complainant.

Mastick & Jones (Chas. S. Jones, of counsel), Sols., for defendants.

CHATFIELD, District Judge. The complainant is the owner of a patent which, after considerable litigation, was upheld by a decree of this court (Diamond Stone Sawing Machine Co. v. Brown et al. [C. C.] 130 Fed. 896), and the matter of damages for infringement referred to a special master. The special master has reported that, upon November 1, 1901, the complainant established a license fee, amounting to $360 per year for each machine, payable quarterly, the first quarter becoming due for the first payment under this license upon the 10th of December, 1901, and that this license fee should be taken as the basis of estimating the damage to the complainant by the infringement by the defendants of the complainant's patent. The master reports that no evidence has been offered of any profits accruing to or received by the defendants from the use of the said patent, and that the defendants herein abandoned the use of the infringing mechanism upon the 27th day of January, 1902. The master has therefore found the total amount of damages to the complainant, for the use of two machines from November 1, 1901, to January 27, 1902, at the rate of $360 per year for each machine, to be the sum of $180, upon which amount he allows interest from December 10, 1901, to the date of the report.

The complainant has excepted to the master's finding upon the ground that, the license fee of $360 per year being found by the master as a proper measure of damages, such damages should have been computed for the entire period during which the defendant infringed, or from a date six years prior to the beginning of the action. The defendants have excepted to the master's report upon the ground that the license fee of $360 was, as a matter of fact, the basis of settlement for infringement by other parties, and that such a settlement is not admissible in evidence, either as a license fee for future use alone or as any measure of damages for infringements by a party other than the one agreeing upon the amount specified as a basis of settlement.

The testimony shows that on behalf of 12 licensees a license rate of $300 per year was offered to the complainant on or about the 10th of October, 1901, and that after consideration and negotiations the amount

of $360 per annum, payable quarterly, was fixed upon as a license fee. It further appears in the testimony that the questions of infringement and of license were kept entirely apart during the negotiations, and the master has found as a question of fact that the payment of $360 was fixed upon as a license rate, and not as a basis of settlement for prior infringements.

The case of Westcott v. Rude (C. C.) 19 Fed. 832, upon appeal Rude v. Westcott, 130 U. S. 152, 9 Sup. Ct. 463, 32 L. Ed. 888, settles beyond argument the doctrine that a so-called license fee or royalty, agreed upon as a basis of settlement for past infringement, cannot be used as an estimate of damage in a suit against other infringing parties. The opinion in the Supreme Court also holds that a license (page 165 of 130 U. S., and page 468 of 9 Sup. Ct. [32 L. Ed. 888]) "must be common—that is, of frequent occurrence—to establish such a market price for the article that it may be assumed to express, with reference to all similar articles, their salable value at the place designated. In order that a royalty may be accepted as a measure of damages against an infringer, who is a stranger to the license establishing it, it must be paid or secured before the infringement complained of, it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention, and it must be uniform at the places where the licenses are issued." Upon the finding of the master, which seems to be supported by the evidence, that the royalty received by the complainant was a license, and not a settlement for prior infringements, the conditions laid down in Rude v. Westcott by the Supreme Court seem to be fulfilled, and the amount of this royalty is, therefore, not only competent as a measure of damages against the defendants herein (who are strangers to the license creating this royalty), but also its exaction from the various parties desiring to use the complainant's patents, subsequent to the date of fixing the amount of royalty, establishes such a uniform custom as to justify the finding of the master that this royalty can be taken as a measure of damages in this action.

As to the period for which damages should be allowed, the report of the master is apparently correct. No evidence is offered to show what the value of the license (what might be called the market price of such a license) would have been prior to the fixing of the royalty upon the 1st of November, 1901; and, while it may be inferred that the rate agreed upon was as reasonable for one period as another, nevertheless, in the absence of testimony, the market value of a privilege can be estimated only from the price which is charged, and without additional proof can apply only to the period for which it is charged. Thus the master has no evidence on which to base any finding as to the market value of a license by the complainant before the 1st day of November, 1901. The testimony and the licenses themselves which have been introduced in evidence show that the various licenses were not executed and delivered upon the first day of the period for which damages have been allowed, viz., November 1, 1901; but the negotiations leading up to the fixing of the price of a license, and a determination of what that price should be, preceded the date of the first license, which was November 1, 1901, and therefore the master's finding that

the license fee was established upon that date seems to the court to be correct.

The master reports that the license fee became liquidated damages, on which interest is allowable, as soon as the license fee was established, and that such interest should run from December 10, 1901, the date at which the first quarterly payment of the license fee on licenses issued prior to that date was made payable. The court cannot see how damages in an action of this nature can be considered liquidated, except upon the theory that, a market price or license value having been established, interest should be allowed upon that market price from the time when this value becomes fixed and easily determinable. It having been decided that the value of this license is $360 a year, and that upon the 27th day of January, 1902, the defendants had incurred an obligation to pay damages according to this market value, amounting to $180, it seems that the complainant should be entitled to interest only from that date, and to this extent the report of the master will be modified.

Except as indicated, the exceptions of both complainant and defendants to the master's report will be overruled, and the complainant may have a decree for the sum of $180, with interest from January 27, 1902.