FUTURES TECHNOLOGY,
LTD., Plaintiff,

v.

Donald J. QUIGG, Commissioner of
Patents and Trademarks,
Defendant.

Civ.A. No. 87–1320–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 26, 1988.

Ross F. Hunt, Jr., Larson & Taylor, Arlington, Va., for plaintiff.

Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This action was instituted by plaintiff to set aside the Final Agency Decision of the Commissioner of Patents and Trademarks. The case is now before the court on the parties' cross motions for summary judgment. As equitable considerations are involved, the facts of the case merit recitation here.

A patent application was filed in the Patent and Trademark Office on June 10, 1982, relating to an invention entitled the "Portable Energy Cost Calculator." The inventor named on that application assigned the invention to Enertronics Research, Inc. (Enertronics) on August 4, 1982. A patent examiner rejected the application on June 18, 1984, and notice of the rejection was mailed to Enertronics' attorney. Enertronics did not respond to the rejection within the three-month response period specified by the examiner, and the application was deemed abandoned on September 19, 1984. Notice of the abandonment was mailed to Enertronics' attorney.

Plaintiff had entered a contract with Enertronics on December 30, 1981 which called for Enertronics to develop inventions and file patent applications for those inventions. This activity was to be carried out with funds provided by plaintiff. Enertronics was to hold any patents it obtained in a fiduciary capacity for plaintiff, and plaintiff was to be the equitable owner of the inventions and patent applications.

During 1984, plaintiff had become dissatisfied with Enertronics' performance pursuant their 1981 contract. Representatives of the parties held a meeting on July 16, 1984. Plaintiff sought to convince Enertronics to assign the contract to Advanced Micro Products, Inc., whose officer, Timothy I. Michels, was at the July 16 meeting. Enertronics' president indicated that his company would not relinquish the development contract, that it was working on the application, and that it would complete that work. At that time, Enertronics' president had already received notice of the rejection of the patent application.

Mr. Michels made other attempts, on behalf of plaintiff, to obtain information about the progress of the patent application. Enertronics was not forthcoming with such information. Enertronics' attorney refused to divulge information to Mr. Michels, based on the attorney's confidential relationship with Enertronics.

The attorney later revealed, in a statement accompanying plaintiff's original petition to revive, that he was instructed by Enertronics "to put all further patent efforts on hold." On a later date, Enertronics told the attorney: "[W]e no longer need your services." Even later, the attorney learned that Enertronics and plaintiff were in litigation and that they were parties to a contract concerning inventions. At that time the attorney recommended the assignment of the application to plaintiff, which was executed on October 22, 1985.

Enertronics assigned the patent application which is the subject of this case to plaintiff on October 22, 1985. Plaintiff filed its original petition to revive the application, under 37 C.F.R. § 1.137(b), on December 18, 1985, maintaining that the application had been unintentionally abandoned. This petition was refused. Several other petitions to revive the application were made by plaintiff, pursuant to 37 C.F.R. § 1.137(a), maintaining that the delay in prosecuting the application was unavoidable. The Commissioner rejected the last of the requests for reconsideration in his Final Agency Decision on October 22, 1987.

Based on the facts of this case, and the applicable law, this patent application was not intentionally abandoned and that the delay in its prosecution was unavoidable. The contract made between plaintiff and Enertronics in 1981 established plaintiff as the equitable owner of this patent application. Plaintiff never intended to abandon this application. In fact, on numerous occasions, plaintiff, or its representatives, inquired of Enertronics as to the status of the application. However, due to circumstances surrounding the relationship between plaintiff and Enertronics, plaintiff was unable to timely prosecute the application.

In determining what constitutes unavoidable delay, the Commissioner has found that the word "unavoidable" should apply to "ordinary human affairs, and [that it] requires no more or greater care or diligence than is generally used and observed by prudent and careful men in relation to their most important business." *Ex parte Pratt,* 1887 Dec. Comm'r Pat. 31, 32–33 (Comm'r Pat.1887), *cited with approval in In re Mattullath,* 38 App.D.C. 497, 514–15 (D.C.Cir.1912).

In this case, plaintiff exercised the diligence observed by prudent and careful men. Plaintiff had a contract with Enertronics, by which Enertronics was to make patent applications and plaintiff was to remain the equitable owner of those applications. Plaintiff had a right to expect Enertronics' performance under that contract. When plaintiff became troubled by Enertronics' performance, plaintiff requested information from Enertronics regarding the status of the application which forms the basis of this case. Plaintiff was given assurances by Enertronics that work was being done on the application, when in fact, such work was not being done. When Enertronics finally assigned the application to plaintiff, the truth of the application's status was discovered, and plaintiff began petitioning for revival.

When the equities of this case are considered, it is clear that plaintiff's delay in prosecuting this application was unavoidable. Accordingly, the Commissioner's decision should be reversed and plaintiff's patent application should be revived.

An appropriate order shall issue.