**Dr. Sinil KIM, Dr. George Martin, Plaintiffs,**

v.

**Donald J. QUIGG, Commissioner of Patents and Trademarks, Defendant.**

**Civ. A. No. 88–702–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 25, 1989.

Charles E. Lipsey, Susan Haberman Griffen, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for plaintiffs.

Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter is before the court on cross motions for summary judgment. On June 7, 1988, plaintiffs filed suit seeking judicial review of the April 1, 1988 decision by the Commissioner of Patents and Trademarks denying plaintiffs' petitions for revival of an abandoned patent application. Because of the *Futures Technology, Ltd. v. Quigg,* 684 F.Supp. 430 (E.D.Va.1988) opinion entered by this court two weeks after the Commissioner's decision and the presence of an equitable ownership argument in plaintiffs' petitions, the parties agreed to an order vacating the decision of April 1, 1988 and remanding the case to the Patent and Trademark Office (PTO) for further consideration in light of *Futures Technology.*

On remand, the Commissioner again denied plaintiffs' petitions for revival and concluded, inter alia, that *Futures Technology* does not apply since plaintiffs did not have equitable title. The standard of review in a case such as this is whether the Commissioner's finding was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). *Camp v. Pitts,* 411 U.S. 138, 142,

(1982). 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Haines v. Quigg,* 673 F.Supp. 314, 316 (N.D.Ind.1987). In applying the standard, the court looks at the administrative record already in existence and not a new record created in this court.

Drs. Sinil Kim and George Martin are co-inventors of United States Patent Application Serial No. 405,002, filed August 4, 1982, titled "High Efficiency Encapsulation Employing Lipid Vesicles" ("the '002 application"). The invention described in this patent application relates to techniques for forming liposomes—tiny particles in which an extremely thin fatty outer bi-layer forms a cavity containing an aqueous phase. Liposomes have a variety of applications, including use as a delivery vehicle for anti-cancer drugs.

The invention was conceived by Dr. Kim while he was a medical student at the University of Washington ("University") in 1978. At that time, Dr. Kim was a student of Dr. Martin. Dr. Kim experimented with the concept on his own time in Dr. Martin's laboratory using materials obtained by Dr. Martin under a series of grants from the National Institutes of Health. Because the invention arose from federally-sponsored research, it was submitted by Dr. Kim to the University. By an agreement with the Department of Health and Human Services ("HHS") of the United States Government, the University must require assignment of rights in each federally-sponsored invention in which the University elects to retain title and grant to the government a nonexclusive, irrevocable, royalty-free license. The University may in turn assign those rights only to an approved "nonprofit patent management organization," and any such assignment is subject to the terms of the Institutional Patent Agreement between the University and the government.

The University uses a nonprofit patent management organization called Washington Research Foundation ("WRF") to assist in patenting and licensing technology. A Technology Administration Agreement governs their relationship. If WRF elects to pursue a license or patent, the University assigns it full right, title and interest in

the technology to allow it to perform that function. In the event a patent resulting from the federally-funded research is granted, the inventors are entitled to a share of the royalty income after the deduction of certain expenses.

Should the Washington Research Foundation decide to abandon a patent application, the Technology Administration Agreement provides that the "[f]oundation may give written notice to University of its intention to abandon...." The University has sixty days after such notice to require assignment back to the University or its nominee. In the absence of direction from the University, WRF will take no further action on the application.

If the University decides it has no interest in an invention, its patent policy provides that the University will formally waive its rights and, assuming no additional University resources will be invested, the inventor may file a patent application on his own.

Initially, the University and WRF decided to prosecute the application. WRF retained the services of patent attorney, Mr. Bertram Rowland, to assist with the legal aspects. The application was filed on August 4, 1982. On June 1, 1984 a final rejection was issued and later transmitted to Dr. Martin for comments. Dr. Martin apparently passed it along to Dr. Kim who sent Rowland his comments on the final rejection. Mr. Rowland filed a response to the final rejection which was received by the PTO on August 2, 1984. On August 14, 1984, an advisory action was issued stating that the response did not overcome the rejection and that the three month time period continued to run from the date of final rejection.

During the month of September 1984, there were several pieces of correspondence and a conversation between Dr. Patrick Y. Tam (then President of WRF) and Mr. Rowland regarding the '002 application. A miscommunication occurred at some point causing Dr. Tam to have the understanding that Mr. Rowland was taking steps to appeal the final rejection while Mr. Rowland believed WRF intended to abandon the patent application. Consequently, no further papers were filed. Because the final rejection was not overcome or appealed within the statutory period, the '002 application was deemed abandoned. A notice of abandonment was mailed January 7, 1985.

On or about February 19, 1986, Dr. Kim telephoned Mr. Rowland to inquire about the status of the application and learned that the application was abandoned. Dr. Kim notified Dr. Tam and efforts were undertaken to revive the application.

A first petition to revive under 37 C.F.R. § 1.137(a) (1988) for unavoidable delay was filed on April 15, 1986. The PTO dismissed the petition to revive, stating plaintiffs failed to establish that the delay due to differing interpretations of a conversation between Dr. Tam and Mr. Rowland was unavoidable. A second petition to revive was filed August 10, 1987. This was also denied, the reason being that a failure in communication does not constitute unavoidable delay within the meaning of 35 U.S.C. § 133 (1982) and 37 C.F.R. § 1.137(a). Meanwhile, the University decided to give up its rights in the invention by letter dated December 2, 1987. (The '002 application previously had been reassigned from WRF to the University on August 28, 1986.) By letter of December 29, 1987, Dr. Martin relinquished his rights in the invention to his former student Dr. Kim.

Two more petitions were filed before the PTO on February 8, 1988, one under 37 C.F.R. § 1.137(a) for unavoidable delay and another pursuant to 37 C.F.R. § 1.183 to suspend the one year filing period requirement of 37 C.F.R. § 1.137(b) and to consider the petition under the unintentional delay standard. On April 1, 1988, the third and fourth petitions were likewise denied. Plaintiffs sought judicial review of the April 1st denial in this court. After remand to the Patent and Trademark Office for consideration in light of *Futures Technology*, the matter is back before the court on cross motions for summary judgment.

In *Futures Technology, Ltd. v. Quigg*, 684 F.Supp. 430 (E.D.Va.1988), plaintiff entered into a contract with Enertronics

which called for Enertronics to develop inventions and file the corresponding patent applications. Plaintiff provided the funding. According to the contract, Enertronics was to hold any patents it obtained in a fiduciary capacity for plaintiff, and plaintiff was to be the equitable owner of the inventions and patent applications. *Id.* at 430. When a patent application assigned to Enertronics was abandoned for failure to prosecute, this court ruled that plaintiff, as equitable owner, had a right to rely on Enertronics' performance under the contract. Plaintiff had exercised diligence by inquiring about the status and was given assurances by Enertronics that work was being done on the application, when in fact, the work was not being done. *Id.* at 431.

Drs. Kim and Martin posture themselves as equitable owners of the '002 application and contend that they assigned legal title with the understanding that the assignee would prosecute the application at least in part for their benefit. Just as the plaintiff in *Futures Technology*, they were led to believe that the application was proceeding in due course, only to learn too late that the application had been abandoned. Plaintiffs argue that the parallelism between their case and *Futures Technology* warrants reversal of the Commissioner's decision and revival of the '002 application.

In a twenty-nine page decision, the Commissioner of Patents and Trademarks held that plaintiffs were not entitled to revival of their application because, among other reasons, they failed to establish that the delay was "unavoidable" within the meaning of 35 U.S.C. § 133 and they failed to show that they had any legal or equitable ownership in the patent application at the time of abandonment. *Futures Technology* extended the inquiry into unavoidable delay beyond the conduct of the legal owners and those immediately responsible for controlling prosecution of the application to that of the equitable owner who by virtue of a fiduciary relationship was relying upon his agent to handle the matter in a proper fashion. However, because the Commissioner correctly found that plaintiffs had no equitable interest, it is not permissible

to consider their conduct when deciding whether the abandonment was unavoidable.

Plaintiffs maintain that they retained an equitable interest in their invention throughout the prosecution by reason of their reversionary interest in the invention should the University or the WRF decide not to pursue a patent and by reason of their right to receive royalties. An examination of the assignments executed during the history of this patent application indicates that the plaintiffs have not retained any legal or equitable interest. The assignment from plaintiffs to the University reads, in part:

> ASSIGNORS [plaintiffs] hereby sell, assign and transfer unto said ASSIGNEE [the University] the full and exclusive right, title and interest in and to said invention ... and the entire right, title and interest in and to any and all letters patent....

Almost identical language appears in the assignment from the University to WRF. An assignment of the entire right, title and interest to an invention passes both legal and equitable title. *Wende v. Horine*, 191 F. 620 (C.C.N.D.Ill.1911). A reversionary interest would exist only if there is a conveyance of less than the entire interest. Plaintiffs and the University gave up all legal rights to the patent when the invention was assigned. They cannot insist that the application be prosecuted; the assignee is free to do as it pleases with the invention. *Garfield v. Western Electric Co.*, 298 F. 659 (S.D.N.Y.1924). Plaintiffs point to language in the Technology Administration Agreement between WRF and the University wherein the parties agreed that WRF may give written notice to the University of intent to abandon a patent application at which time the University could require assignment of rights back to the University or to its nominee. The provision is phrased in the permissive and does not create a reversionary interest. The plaintiffs' and the University's interest in the application was, at best, a mere possibility that the application would be reassigned. Subsequently, in August 1986, WRF assigned the application back to the Universi-

ty, and the University in turn relinquished its rights to the inventors in December 1987. However, for purposes of reviving an application due to unavoidable delay, the focus must be on the rights of the parties as of the time of abandonment. *See* 37 C.F.R. § 1.32 (assignee of entire interest entitled to conduct prosecution to exclusion of inventor). During the time period pertinent to the prosecution of application '002 (Aug. 4, 1982 to Jan. 7, 1985), WRF held the entire right, title and interest to the invention with the government holding a nonexclusive, irrevocable, royalty-free license.

Plaintiffs' contention that the royalty-sharing provisions of the Institutional Patent Agreement with HHS and the University's patent policy create an equitable interest on the part of the inventors is also without merit. An agreement to share in the profits of an invention does not modify or limit the absolute transfer of title once an assignment of the entire right, title, and interest has been executed. *Rude v. Westcott*, 130 U.S. 152, 162–63, 9 S.Ct. 463, 467, 32 L.Ed. 888 (1889). One of the issues addressed in *Rude v. Westcott* was whether an inventor had to be joined as a party because an assignment of letters patent included a royalty-sharing provision. The United States Supreme Court ruled that the assignees "do not hold the property as trustees for the benefit of the patentee; they are only trustees for him of one fourth of the profits which may be received by them." *Id.* at 163, 9 S.Ct. at 467. At most, WRF was a "trustee" of a percentage of the royalties. Plaintiffs' "interest" was to the share of royalties provided for in the various patent agreements and not to any title in the patent application itself.

Since plaintiffs have failed to demonstrate that they are equitable owners of patent application '002, whether they acted as reasonably prudent persons is irrelevant. *See In re Mattullath*, 38 App.D.C. 497, 514–15 (D.C.Cir.1912) (setting forth the test of unavoidable delay as being whether the parties exercised the care or diligence used by prudent and careful people in relation to their most important business). The Commissioner reviewed wheth-

er the assignee of record, WRF, had exercised this level of care in the prosecution of patent application '002 and determined it had not.

For these reasons, the decision of the Commissioner of Patents and Trademarks was neither arbitrary nor capricious. Defendant's motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied, and this case is dismissed. An appropriate order shall issue.