**Corliss O. BURANDT, Plaintiff,**

v.

**Jon W. DUDAS, Director of the United States Patent & Trademark Office Defendant.**

**No. 1:06 CV 1141.**

United States District Court, E.D. Virginia, Alexandria Division.

July 12, 2007.

David Michael Young, Goodwin Procter LLP, Washington, DC, for Plaintiff.

Dennis Carl Barghaan, Jr., United States Attorney's Office, Alexandria, VA, for Defendant.

## *MEMORANDUM OPINION*

HILTON, District Judge.

This matter comes before the Court on cross motions for summary judgment. Plaintiff Corliss Burandt filed a Complaint in this Court on October 10, 2006, seeking judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.* (2000), challenging a decision made by Defendant Jon W. Dudas, Director of the United States Patent and Trademark Office (USPTO) and Undersecretary of the Department of Commerce for Intellectual Property, denying Plaintiff's petitions to reinstate United States Patent No. 4,961,-406 (the '406 patent). In the Complaint, Plaintiff claims that he adequately showed that the delay in payment of the patent maintenance fee was "unavoidable" under 35 U.S.C. § 41(c)(1) (2000), and thus, Plaintiff is entitled to reinstatement of the '406 patent. In the Complaint, Plaintiff also petitions this Court for a writ of mandamus to compel Defendant to reinstate the '406 patent, alleging that Defendant's refusal to reinstate the '406 patent was arbitrary, capricious, and an abuse of discretion. Both Plaintiff and Defendant

now move this Court for summary judgment.

Plaintiff Corliss Burandt is a United States citizen and resident of Minnetonka, Minnesota. Plaintiff claims that he is the sole inventor of the '406 patent as well as the current assignee, and the legal and equitable title holder of the '406 patent, a "Method and Device for Optimizing the Air–Fuel Mixture Bum Rate of Internal Combustion Engines During Low Speed, Light and Heavy Load Operating Conditions," issued on October 9, 1990, from U.S. Patent Application No. 07/1778,467, filed on April 7, 1988.

Defendant Jon W. Dudas is the Director of the USPTO and Undersecretary of the Department of Commerce for Intellectual Property. The USPTO is a federal agency within the United States Department of Commerce, located in Alexandria, Virginia in the judicial district of the Eastern District of Virginia, Alexandria Division. This Court has jurisdiction over the subject matter pursuant to the APA, 5 U.S.C. §§ 701 *et seq.* and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361 (2000).

In September 1980, Plaintiff designed engines for Investment Rarities Incorporated (IRI), a Minnesota company. On August 4, 1981, Plaintiff voluntarily entered into an assignment agreement with IRI which provided that IRI would fund Plaintiff's research and development of engine designs and, in return, any and all patent applications and patents developed using IRI's funds would become the property of IRI. As compensation, Plaintiff would receive twenty-eight percent of the net profits derived from such patents. The agreement further provided that Plaintiff could repurchase the patents from IRI if certain prerequisites were met, including IRI's notice that it would no longer fund Plaintiff's research and that any funded project was not substantially completed.

Pursuant to the agreement, Plaintiff developed and assigned to IRI the '406 patent.

At that time, the maximum term allowable for the '406 patent was seventeen years from the date of issuance. To prevent the '406 patent from expiring prematurely, IRI, the legal title holder, was required to pay maintenance fees to the USPTO at three-and-a-half, seven-and-a-half, and eleven-and-a-half years from the date of issuance. The '406 patent issued on October 9, 1990. IRI's first maintenance fee was due on April 9, 1994, but could be paid up to six months late with a surcharge. *See* 35 U.S.C. § 41(b). IRI did not pay or attempt to pay the three-and-a-half year maintenance fee and, as such, the '406 patent expired on October 9, 1994.

According to Plaintiff, he first learned that the '406 patent expired seven years later, in December 2001, when Plaintiff read an article regarding the introduction of a variable valve engine by Honda. Plaintiff claims that at this time, he contacted the USPTO to confirm that all was in order with his patents. Plaintiff concedes and the administrative record confirms that Plaintiff made no attempt to contact the USPTO or IRI at any time during the ten years between the issuance of the '406 patent and December 2001, let alone at any time prior to the date on which the initial or second maintenance fees were due, even to inquire as to whether IRI had paid the maintenance fees associated with the patent.

Plaintiff maintains that after discovering that the '406 patent had expired, Plaintiff sought and regained legal title to the patent from IRI on May 21, 2002. On October 9, 2005, more than eleven years after the deadline for paying the initial three-and-a-half-year maintenance fee, more than nine years after the period for reinstating the patent under the less strict

"unintentional delay" standard,[1] and more than three years after Plaintiff regained title, Plaintiff attempted to pay the requisite maintenance fees and reinstate the '406 patent under the more stringent "unavoidable delay" standard.

In total, Plaintiff filed four petitions, making the same arguments for reinstatement of the '406 patent in each petition. In his petitions, Plaintiff did not present any evidence that IRI had taken any steps to pay maintenance fees in the '406 patent nor did Plaintiff explain the reasons behind IRI's failure to pay the fees or that any delay on IRI's part was "unavoidable." Instead, Plaintiff argued that he should not be bound by the acts of the prior assignee, IRI, because Plaintiff maintained equitable title in the '406 patent. In support of this argument, Plaintiff produced letters demonstrating that he and his attorney had contacted IRI between 1988 and 1990 in an attempt to exercise Plaintiff's repurchase option under the assignment agreement. Plaintiff asserted that he was unable to pursue court action to regain title of the '406 patent over the next twelve years because of lack of funding. In short, Plaintiff asked the USPTO to ignore the actions of the legal title owner, IRI, and to instead focus solely on his actions as the alleged equitable title owner in determining whether to reinstate the '406 patent.

Building on this premise, Plaintiff next argued that any delay on his part, as the alleged equitable title holder, was "unavoidable" based on his financial status and mental illness. Plaintiff proffered financial records to show that he lacked sufficient financial capacity at the time that the maintenance fees in the '406 patent first came due, and for some period thereafter. Plaintiff also produced declarations from his psychiatrist to show that he suffered from an anxiety disorder which, in his psychiatrist's opinion, would allow Plaintiff to "provide effective assistance to counsel in proceeding before the USPTO only provided that counsel was patient and properly focused on the relevant inquiries." Finally, Plaintiff asserted that, beginning in December 2001, after Plaintiff learned the '406 patent expired, Plaintiff made several attempts with attorneys, congressional leaders, automobile manufacturers, and the press to get legal and financial assistance to reinstate the expired '406 patent.

The USPTO issued three decisions in this matter, the first two dismissing Plaintiff's petitions and the last denying his final petition. In its decisions, the USPTO explained that the evaluation of a petition to reinstate a patent under the "unavoidable delay" standard looks to three time frames: (1) the delay that originally resulted in the expiration, (2) the delay in filing the first petition to reinstate, and (3) the delay in filing a grantable petition to reinstate. Consistent with the Federal Circuit's decision in *Ray v. Lehman,* 55 F.3d 606 (Fed.Cir.1995), the USPTO interpreted 35 U.S.C. § 41(c) and its own regulation, 37 C.F.R. § 1.378(b)(3)(2006) as follows:

> [A]n adequate showing that the delay in payment of the maintenance fee at issue was "unavoidable" within the meaning of 35 U.S.C. § 41(c) and 37 C.F.R. [§ ] 1.378(b)(3) requires a showing of the steps taken by the responsible party to ensure the timely payment of the [first] maintenance fee for this patent.

The USPTO's evaluation, therefore, focused on the activities of the responsible party in each of the relevant time periods.

---

1. The USPTO may accept late maintenance fee payments for up to twenty-four months after expiration if a patent owner shows that his late payment was merely "unintentional." *See* 35 U.S.C. § 41(c)(1).

With regard to the first time period, the USPTO found that, as the legal title holder, IRI was responsible for paying the three-and-a-half year maintenance fee for the '406 patent, but failed to do so. The USPTO reminded Plaintiff that, under 35 U.S.C. § 41(c), Plaintiff has the burden of establishing the cause of the "unavoidable delay," and then found that Plaintiff failed to present any evidence that steps were taken by or on behalf of IRI to ensure timely payment of the three-and-a-half year maintenance fee. The USPTO also cautioned Plaintiff that, in the absence of adequate evidence showing that IRI transferred its obligation to pay the requisite fees to Plaintiff at the time the first maintenance fee came due in 1994, Plaintiff must show that IRI had measures in place to make the fee payment but was "unavoidably" prevented from doing so. According to the USPTO, Plaintiff failed to make such a showing.

Turning to the last two periods of delay, the USPTO noted that Plaintiff waited four years after Plaintiff learned that the '406 patent expired to file his petition to reinstate. Although the USPTO expressed sympathy for Plaintiff's unfortunate financial and mental condition during this time period, the USPTO observed that, for mental illness to constitute "unavoidable delay" under § 1.378(b), the incapacitation must be "of such a nature and degree as to render [Plaintiff] unable to conduct business during" the relevant period. In this regard, the USPTO noted that Plaintiff's ability to write numerous letters to IRI and Honda threatening legal action, and to automobile companies, the press, congressional officials and others to obtain funding for and market his invention indicated that Plaintiff's delay in filing his petition was not "unavoidable."

With respect to Plaintiff's equitable interest argument, the USPTO acknowledged the repurchase rights in Plaintiff's assignment agreement with IRI, but found no evidence that those rights had been exercised (i.e., IRI was still the owner of the '406 patent) when the time the first fee came due. Because IRI was the owner of the patent at the time the first maintenance fee was due, Plaintiff was "bound by the actions or inactions[,] errors or omission[s] of IRI, the responsible entity." And, even if Plaintiff had equitable title and "assumed responsibility for payment of maintenance fees, it [was] incumbent upon [Plaintiff] to show that he acted as a reasonable and prudent person in pursuit of [his] most important business." The USPTO found that Plaintiff had not employed any system, "however rudimentary, to inform him ... of when the maintenance fee was due."

The USPTO concluded that it was clear that Plaintiff had "relied on IRI to pay the maintenance fee" during the relevant time period, and that although Plaintiff should not have been so trusting, "it does not constitute unavoidable delay."

In rejecting Plaintiff's equitable title argument, the USPTO distinguished the circumstances found in the administrative record before it from those presented to this Court in *Futures Technology v. Quigg,* 684 F.Supp. 430 (E.D.Va.1988). In *Futures,* the legal owner lied to the plaintiff about the status of a patent application. *Id.* at 431. Although Plaintiff was clearly upset with IRI's conduct towards him, the USPTO noted that IRI had not committed fraud upon Plaintiff let alone lied to Plaintiff about whether IRI had paid the maintenance fees. In addition, the USPTO explained that *Futures* concerned a patent application, about which only a patent owner may inquire, whereas here, Plaintiff was free to contact the USPTO to inquire about the status of the '406 patent at any time as his actions in 2001 demonstrate. *Id.* The USPTO pointed out that Plaintiff

never took this action prior to the expiration of the '406 patent. In fact, despite Plaintiff's knowledge that IRI had previously let three of his other patents expire prematurely, Plaintiff continued to rely upon IRI to make fee payments for the '406 patent.[2] Plaintiff now asks that this Court review the USPTO's decision.

■ The sole question presented in the instant action is whether Plaintiff has borne his burden to demonstrate that Defendant's refusal to reinstate his expired patent was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (2000), especially given the degree of discretion to which the Director is entitled. *See e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). If Plaintiff has not made this essential demonstration, Defendant is entitled to judgment as a matter of law.

Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ..P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an oth-

erwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In determining whether agency action violates 5 U.S.C. § 706(2)(A), the Fourth Circuit held that the court is limited to reviewing whether the agency conformed with controlling statutes and whether the agency committed a clear error of judgment. *Holly Hill Farm v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (quoting *Maryland Dep't of Human Res. v. USDA*, 976 F.2d 1462, 1475 (4th Cir.1992)). The standard of review is "narrow," and does not authorize a district court "to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), In summary, a reviewing court pursuant to the APA "must give deference ... to the agency's decision if supported by rational basis in the record." *Fort Mill Telephone Co. v. FCC*, 719 F.2d 89, 91 (4th Cir.1983).

In the instant action, this Court is asked to review an agency's decision applying a regulatory framework that the agency created. *See generally Chevron USA, Inc. v. Nat. Res. Def. Coun.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also MMTC, Inc. v. Rogan*, 369 F.Supp.2d 675, 678 (E.D.Va.2004) (recognizing that inquiry was limited to a "consider[ation of] whether the decision was based on a con-

---

**2.** The USPTO also rejected Plaintiffs argument that as only an equitable owner, USPTO would not have accepted payment from him, and that he was similarly barred from filing a petition for reinstatement.

sideration of the relevant factors and whether there has been a clear error of judgment").

■ A patent owner seeking to reinstate an expired patent bears the burden of proving that the delay was "unavoidable." *See R.R. Donnelley,* 123 F.Supp.2d at 459. To establish that the delay was "unavoidable," the patent owner must provide evidence that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent," and "enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which [the] patentee became aware of the expiration of the patent, and the steps taken to file the petition [for reinstatement] promptly." 37 C.F.R. § 1.378(b)(3).

The key question is, as the Federal Circuit has held, "whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person," *Ray v. Lehman,* 55 F.3d 606, 609 (Fed.Cir.1995). In this context, the "reasonably prudent person" has been interpreted to mean that the patent owner must exercise the diligence "generally used and observed by prudent and careful men in relation to their most important business." *R.R. Donnelley,* 123 F.Supp.2d at 459 (quoting *In re Mattullath,* 38 App. D.C. 497 (1912)). Congress intended the "unavoidable" delay standard to be strict. As Congress has written, "[a]fter the expiration of a reasonable period of time, the patentee would bear a heavy burden of proof that the delay was unavoidable." H.R.Rep. No. 97–542, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 772.

The Federal Circuit has conclusively and unequivocally spoken about whose actions must be reviewed in determining whether a delay in paying maintenance fees is to be considered "unavoidable" pursuant to both 35 U.S.C. § 41(c) and 37 C.F.R. § 1.378(b)(3): "[I]n determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." *Ray,* 55 F.3d at 609.

IRI was the party responsible for paying the initial maintenance fee. In none of Plaintiff's several petitions for reinstatement did Plaintiff argue to the contrary. In fact, Plaintiff openly concedes that he relied on IRI to pay the maintenance fees. Initially, Plaintiff admitted in a sworn declaration submitted to the USPTO that, after several failed attempts to exercise his repurchase rights with IRI, the latter "agree[d] to cooperate in marketing whatever was left to market in the portfolio that would have required payment of the maintenance fees." Plaintiff's purported surprise upon contacting USPTO in 2001 and learning that the '406 patent had expired for failure to pay maintenance fees also conclusively demonstrates that Plaintiff believed that IRI would be responsible for paying the requisite fees.

Despite IRI's responsibility for payment of the maintenance fees at the time, Plaintiff did not offer a scintilla of evidence concerning the circumstances attending IRI's failure to pay the pertinent maintenance fees, let alone any explanation of the steps IRI took to ensure timely payment. The administrative record is devoid of any evidence even suggesting that IRI—with respect to the payment of maintenance fees on the '406 patent—exercised the due care of a reasonably prudent person. *See Mattullath,* 38 App. D.C. at 514.

In short, given the Federal Circuit's decision in *Ray,* the instant inquiry should focus on the reasons behind IRI's failure to pay the maintenance fees on the '406

patent in a timely fashion. Plaintiff failed to present evidence that IRI treated the '406 patent and, most importantly, the maintenance fees associated with the same, as a reasonably prudent person would his most important business. In contrast, the record indicates that IRI intentionally let the '406 patent expire, just as it had other patents related to Plaintiff's inventions. Given this Court's deferential review, Defendant is entitled to the entry of summary judgment in his favor.

■ In Plaintiff's arguments to the USPTO, Plaintiff erroneously relied on this Court's decision in *Futures*, 684 F.Supp. at 430, to support his position that because he retained an equitable interest in the '406 patent, the "unavoidable delay" inquiry should focus upon his actions. *Futures*, however, is readily distinguishable from the facts presented in the administrative record. In *Futures*, an inventor assigned a patent application to a third party entity, who neglected the application after the USPTO initially rejected it, and the USPTO ultimately found the application abandoned. *See id.* at 430. Before the USPTO's abandonment finding, however, the assignee fraudulently ensured the inventor that it was working on—and would complete—the application, and other repeated inquiries into the status of the application were rebuffed. *See id.* at 430–31. After learning that the application was abandoned, and that the assignee had lied about its continuing work on the application, the inventor unsuccessfully petitioned the USPTO to revive his application under the unavoidable delay standard. *See id.* at 431.

This Court reversed the USPTO's denial of that petition, holding that "[b]ased on the facts of this case . . . this patent application was not intentionally abandoned and . . . the delay in its prosecution was unavoidable." *Id.* After referencing the fact that plaintiff was the equitable owner of the patent application in question, this Court analyzed whether "plaintiff exercised the diligence observed by prudent and careful men." *Id.* In engaging in this analysis, this Court recognized that "plaintiff requested information from [the third-party assignee] regarding the status of the application which forms the basis of this case" and was ultimately lied to about the same. *Id.* Given these specific facts, this Court held that "plaintiff's delay in prosecuting th[e] application was unavoidable." *Id.*

For several reasons, even if this Court were able—despite the Federal Circuit's decision in *Ray*—to look to the actions of a party other than the party responsible for paying the maintenance fees at the time they were due, this Court's decision in *Futures* cannot serve to rescue Plaintiff's claim. Specifically, Plaintiff cannot make the necessary showing that his actions with respect to the payment of maintenance fees—either before the expiration of the '406 patent in October 1994 or in the seven years beyond that date—meets the stringent "unavoidable" standard.

The administrative record demonstrates that far from treating the payment of maintenance fees on the '406 patent as his "most important business," Plaintiff never employed any system whatsoever to remind himself of the necessity of timely paying the necessary fees, never inquired of IRI or the USPTO whether the maintenance fees would or had already been paid, and as such, was never—unlike the plaintiff in *Futures*—defrauded into erroneously believing that such an obligation had been completed. To the contrary, the record evidence is that Plaintiff blindly relied upon IRI to pay the maintenance fees on the '406 patent notwithstanding knowledge of IRI's earlier failures, and was surprised when he learned in 2001 that the patent had expired for failure to pay such fees.

Moreover, Plaintiff could have easily contacted the USPTO to inquire about the status of the '406 patent, but did not do so until seven years after it had expired. These undisputed record facts make the instant circumstances far different from the equities that led this Court to conclude that the Plaintiff in *Futures* had acted in accordance with the relevant standard.

As stated earlier, the courts have interpreted the "unavoidable delay" standard as requiring the individual or entity in question to have exercised the due care and diligence "generally used and observed by prudent and careful men in relation to their most important business" in attempting—but failing—to pay the maintenance fee in a timely fashion. *R.R. Donnelley,* 123 F.Supp.2d at 459 (quoting *Mattullath,* 38 App. D.C. at 497); *see also MMTC,* 369 F.Supp.2d at 678 (reviewing the "steps [taken] to ensure timely payment of maintenance fees" against the above standard). The plaintiff in *Futures* made repeated efforts to ensure that the third-party assignee was continuing to process and work on the patent application at issue, and as such, that the application was not being abandoned. *See Futures,* 684 F.Supp. at 430–31. Despite these efforts, the third-party assignee withheld information and lied to the plaintiff about the application.

The record evidence in the instant case concerning Plaintiff's efforts to ensure that the maintenance fees would be paid timely on the '406 patent or lack thereof are quite different. At the threshold, there is absolutely no record evidence to the effect that, after the issuance of the '406 patent in 1990, Plaintiff made any inquiry whatsoever—whether to IRI or USPTO—concerning the payment of maintenance fees. In addition, no evidence exists that IRI lied to Plaintiff that the fees had been paid. Indeed, there is no record evidence even suggesting that Plaintiff employed any system whatsoever to remind himself that

the initial maintenance fee was due on the '406 patent in or around October 1993, although Plaintiff could have done so.

To the contrary, the record evidence—including Plaintiff's own sworn declaration—provides that after he and IRI purportedly settled their contract dispute through an agreement executed in May 1990, Plaintiff blindly relied upon IRI to pay the requisite maintenance fees. The record reflects that in December 2001, seven years after the '406 patent expired, Plaintiff contacted the USPTO to confirm that all was in order with my patents and learned for the first time that IRI had not paid the required maintenance fee and that the patent had lapsed. Plaintiff also relied on IRI notwithstanding several previous situations in which by Plaintiff's own allegations, IRI was not financially supporting Plaintiff's other inventions or remitting the necessary payments to the USPTO concerning, inter alia, the invention that would become the '406 patent.

Plaintiff's own writings demonstrate that he knew that IRI had allowed patents on three of his other inventions to expire prematurely. And although this is irrelevant to whether one has demonstrated "unavoidable delay" in the payment of maintenance fees, *see Rydeen v. Quigg,* 748 F.Supp. 900, 905 (D.D.C.1990), *aff'd,* 937 F.2d 623 (Fed.Cir.1991), there can be little doubt that Plaintiff knew of the obligation to remit maintenance fees. The failure to take any action either to ensure that the maintenance fees were paid by IRI, or even to determine whether the fees had been paid, until seven years had passed from the date of expiration can hardly be squared with the manner by which "prudent and careful men" conduct their most important business. *See R.R. Donnelley & Sons,* 123 F.Supp.2d at 461 (finding delay not "unavoidable" because "[o]ther than blindly leaving the maintenance fees

for the '031 patent to [a third-party] . . . plaintiff has not established that any steps were taken to ensure timely payment").

The irrefutable facts also belie Plaintiff's attempts to demonstrate that the delay in paying the maintenance fees was "unavoidable" as a result of his alleged medical and financial incapacity. As stated above, the record demonstrates that Plaintiff took no action whatsoever in the eleven years (which began before his purported incapacitation) between the issuance of the '406 patent and his discovery of its expiration in 2001 to determine whether the necessary fees had been remitted. Accordingly, as the USPTO correctly found, because Plaintiff did not even know of IRI's failure to pay the fees, he would not have taken any action with respect to the maintenance fees even if he were completely healthy and financially sound. The record also fails to demonstrate that Plaintiff's condition prevented him from inquiring into the status of the patent. To the contrary, his own contact with the USPTO in 2001 "to confirm that all was in order with [his] patents," his subsequent negotiations with IRI to have the '406 patent reassigned to him, and his numerous letters for assistance from Congress, automobile manufacturers, and attorneys (which ultimately led to this proceeding) belie any such contention.

In addition, Plaintiff's conceded reliance upon IRI to pay the requisite maintenance fees renders him bound by IRI's failures. As the USPTO opined, and as another district court has provided, when one relies upon another individual or entity for the payment of maintenance fees, the individual "is bound by any errors that may have been committed by" that third-party. *California Med. Prods., Inc. v. Tecnol Med. Prods., Inc.*, 921 F.Supp. 1219, 1259 (D.Del.1995); *Haines v. Quigg*, 673 F.Supp. 314, 317 (N.D.Ind.1987) (imputing on the patentee failures of agent employed

to pay maintenance fees). And in these situations, the patentee may obtain reinstatement only upon a showing that the third-party's failure to pay the maintenance fees was "unavoidable"; that is, that despite acting with the care that would be exercised by prudent men in their most important business, the fees were not ultimately paid in a timely fashion. *See Cal. Med. Prods.*, 921 F.Supp. at 1259. And as demonstrated above, Plaintiff has not presented any evidence on the subject of IRI's actions in ensuring timely payment of the necessary maintenance fees.

The "unavoidable delay" standard is necessarily stringent. Individuals and entities who are making business decisions have the right to rely on the fact that if a patent has lain dormant due to premature expiration for nearly a decade, it will be the rare case—one presenting extraordinary facts demonstrating that there truly was nothing else that the patent owner could have done—that will cause the USPTO to reinstate such a patent and expose others to liability. Plaintiff's failure to take any action to ensure or even inquire about, before expiration, and also waiting an extensive period of time after expiration to take similar action, does not even come close to this exacting standard. The USPTO's decision is supported by a rational basis in the record and therefore Defendant is entitled to the entry of judgment in his favor on Plaintiff's APA challenge.

■ Plaintiff also seeks the issuance of a writ of mandamus, pursuant to 28 U.S.C. § 1361, alleging that Defendant owed him a "duty to take all the facts and circumstances into consideration in reviewing" his petitions. It is well established that, as the Supreme Court has repeatedly articulated, a writ of mandamus is considered a "drastic remed[y]" that is to be utilized only when the petitioner has made a showing that he has "no other adequate means"

to attain the relief he desires, and that his right to that relief is "clear and indisputable." *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Before a writ of mandamus may properly issue from a district court, a plaintiff must establish the following: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *In re: First Fed. Sav. & Loan Ass'n,* 860 F.2d 135, 138 (4th Cir.1988); *Power v. Barnhart,* 292 F.3d 781, 784 (D.C.Cir. 2002).

■ Plaintiffs mandamus claim fails at the threshold because Plaintiff does have an adequate alternative remedy—the APA. *See Ransom v. Babbitt,* 69 F.Supp.2d 141, 149 (D.D.C.1999) (holding that because plaintiff could present his claim under the APA, mandamus jurisdiction would not lie); *see also Borntrager v. Stevas,* 772 F.2d 419, 420 (8th Cir.1985) (holding mandamus jurisdiction inappropriate when petitioner had alternative review of challenged government conduct available).

More specifically, however, the record belies any notion that the USPTO failed to take into account all of the facts and circumstances presented in his petition. Through three separate decisions (totaling approximately thirty pages), USPTO officials carefully considered each of Plaintiff's arguments in favor of reinstatement, and disagreed with him that the delay in paying the maintenance fees on the '406 patent was "unavoidable."

■ Plaintiff also cannot maintain that the USPTO owes him a clear duty to reinstatement of the '406 patent. In order to qualify for mandamus consideration, the duty in question must be ministerial in nature, as opposed to discretionary, and "[a] ministerial duty is one that admits of no discretion, so that the official has no authority to determine whether to perform the duty." *Garcia v. U.S. Dep't of Justice,* 2005 WL 3273720 at *2, 2005 U.S. Dist. LEXIS 18869 at *6 (D.D.C. Aug. 31, 2005) (citing *Swan v. Clinton,* 100 F.3d 973, 977 (D.C.Cir.1996)). Every court to have addressed this specific question has concluded that both 35 U.S.C. § 41(c) and 37 C.F.R. § 1.378(b)(3) vest an inordinate amount of discretion in Defendant. Plaintiff therefore cannot establish that USPTO owed him a clear duty to accept his arguments and order reinstatement, and as such, his mandamus claim should be denied.

For the reasons set forth above, Defendant's Motion for Summary Judgment should be GRANTED, Plaintiff's Motion for Summary Judgment should be DENIED, and this case should be DISMISSED An appropriate order shall issue.